**Bartholomew J. JOHNSON,
Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 10A01–0007–CR–240.**

Court of Appeals of Indiana.

May 7, 2001.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Bartholomew J. Johnson appeals his convictions for resisting law enforcement and disorderly conduct. Specifically, he argues that the trial court improperly excluded a 911 tape and erred by admitting testimony regarding the amount of damages sought by the defendant in a related civil suit. He argues further that his convictions are not supported by sufficient evidence. Because we find that no error occurred in the exclusion of the 911 tapes or the admission of the damage amount and sufficient evidence supports his resisting arrest conviction, we affirm. However, because we find he engaged in political speech, we reverse his disorderly conduct conviction.

### Facts and Procedural History

The facts most favorable to the evidence reveal that on the morning of April 2, 1998, Clark County Animal Control Officer Chester Copeland responded to a call regarding a german shepherd chasing children at a school bus stop. Clark County Police Officers Kevin Sims and Scott Johns accompanied Officer Copeland on his investigation of the complaint. Because the complainant indicated that the german shepherd belonged to Johnson, the officers drove to Johnson's home. Officers Copeland and Sims spoke with Sherry Smothers, Johnson's wife at the time, about a german shepherd who was on her porch. She told the officers that she owned the dog. While they were talking, another dog approached the house. Smothers in-

formed the officers that the second dog did not belong to her, but had belonged to a neighbor who had died and others in the neighborhood had begun to feed the stray dog. Officer Copeland caught the stray dog and took it to the animal shelter.

Later that same day, Johnson and Smothers visited the animal shelter. In a loud and belligerent manner, Johnson told Officer Copeland that he owned the stray dog, which had been removed, from his property earlier that day. Eventually, Smothers convinced Johnson to leave the shelter.

After Johnson and Smothers departed, Officer Copeland informed Officer Johns that Johnson now claimed to own the stray dog. As a result, Officer Johns returned to the Johnson home in order to issue them a dog restraint violation.

When Officer Johns arrived at the Johnson home, Johnson came to the door of his trailer. Officer Johns explained why he was there. In response, Johnson called Officer Johns a "mother f-----," told him to get the "f---" off of his land, and slammed the door in his face. Record at 324. Officer Johns returned to his car and called for backup. Smothers then appeared on the porch and motioned for Officer Johns to return to the porch. Officer Johns joined Smothers on the porch and tried to explain the citation to her. At some point during their discussion, Johnson reappeared in the doorway to the trailer and started screaming and hollering at the officer.

At trial, Officer Johns testified that Johnson was

[C]onstantly screaming at me, screaming at his wife not to take it, "tear the "f------" thing up." "We're not going to go to court." All this time myself and Officer Sims were turning around and asking him "Sir, please go back in the residence. This isn't worth going to jail

over. If you continue this behavior, screaming and hollering, loud noises, we're going to arrest you for Disorderly Conduct." Mrs. Johnson was turning around and at one time said Mr. or "Bart, go back in the house. If they're wrong we'll settle it in court. Please go back in the residence."

Record at 332. During this exchange, the officers warned Johnson several times to calm down so they could do their job and that if he did not calm down, they would arrest him for disorderly conduct. Johnson called the sheriff's department, screamed for Smothers to take the telephone and talk with the Sheriff. When she did not accept the phone, he threw the phone towards her. The phone landed on the ground, Officer Johns picked up the phone and briefly talked with the Sheriff. After Officer Johns explained the situation, the Sheriff told him to issue the citation as quickly as possible and leave.

Following the phone call, Johnson continued to yell and disrupt the issuance of the citation. As Johnson stood in the doorway to his trailer, Officer Johns grabbed his arm in order to arrest him. Johnson jerked away from the officer and ran into the trailer. Officer Johns followed Johnson into the trailer and a struggle ensued. After spraying Johnson with pepper mace two times, the officers were able to handcuff the defendant. An ambulance was called for because Johnson began experiencing chest pains and Smothers experienced a seizure.

The State charged Johnson with resisting law enforcement and disorderly conduct. In a motion in limine, the trial court ruled that evidence of Smothers' medical condition could not be admitted into evidence. The trial court also ruled that recordings of two 911 telephone conversations were inadmissible because the re-

cording was hard to understand and contained information regarding Smothers' health condition. In addition, the trial court ruled that the amount of damages sought by Johnson and Smothers in a related tort claim was inadmissible. However, the trial court ruled that testimony that the amount was "substantial" would be allowed.

Following a jury trial, Johnson was convicted of disorderly conduct and resisting law enforcement. Johnson filed a motion for judgment notwithstanding the verdict. The trial court denied Johnson's motion. This appeal followed.

## Discussion and Decision

Johnson challenges his convictions for Resisting Law Enforcement and Disorderly Conduct. He alleges three bases upon which his convictions should be overturned. First, he asserts that the trial court erred by excluding a 911 tape. Second, he contends that the trial court erred by admitting the amount of damages he sought in a related civil suit. Third, he maintains that his convictions were not supported by sufficient evidence. We address each of these arguments in turn.

### I. Exclusion and Admission of Evidence

Johnson argues that the trial court erred by excluding two 911 tapes and by admitting evidence regarding the amount of money sought in a civil suit. A trial court has broad discretion in ruling on the admissibility of evidence during trial. *Robinson v. State*, 720 N.E.2d 1269, 1271 (Ind.Ct.App.1999). We will only disturb a trial court's ruling on the admissibility of the evidence upon a showing of an abuse of discretion. *Id.*

### A. 911 Tape

Johnson contends that the trial court erred in excluding two 911 telephone conversations which were recorded on an au-

diotape. During trial, Johnson attempted to have the 911 tapes admitted into evidence. Johnson argued that the tapes were relevant to refute the testimony of Officer Johns and Officer Sims that Johnson argued and yelled continuously while Officer Johns tried to explain the citation to Smothers. In particular, Johnson claims the tapes disclose that there was no yelling in the background when 911 was called. The trial court listened to the tapes at trial outside the hearing of the jury. In making its ruling, the trial court focused on the discussion in the foreground of the tape, not the background, which would have included any yelling by the defendant. The trial court excluded the tapes because the conversation in the foreground focused on the medical conditions of Smothers and a motion in limine covered this information. Thus, the trial court excluded the tapes.

▆ Johnson has waived this issue on appeal because he failed to provide the tapes or a transcript of the tape recordings in the record. It is the appellant's duty to provide the reviewing court with an adequate record for review. *Adams v. State*, 539 N.E.2d 985, 988 (Ind.Ct.App.1989). An appellant waives review of his claim if he fails to provide the appellate court with an adequate record for review of his claim. *Id.* Here, because Johnson failed to provide us with the tapes or a transcript of the discussions presented on the tapes, we do not have a complete record before us. Thus, this argument has been waived.

### B. Admission of Civil Damages Sought

Johnson also challenges the trial court's admission of his testimony regarding the amount of money he sought in a tort claim. Before trial, the trial court ruled that testimony regarding the actual amount of damages sought by Johnson and Smothers in

their tort claim was inadmissible. However, the trial court ruled that testimony which described the damages sought as a "substantial" amount was admissible.

During Johnson's cross-examination, the following colloquy occurred:

Q: ... Isn't it correct that it is a substantial amount of money?

A: I suppose that could be described as substantial, yes, yes, a substantial amount of money.

Q: Could be described. Its like winning the lottery, isn't it, to get that kind of money.

Record at 714. Johnson objected to this line of questioning because the trial court had previously determined that the actual amount of money would not be admitted into evidence. Record at 714. The trial court overruled the objection, noting:

If the Defendant wants to quibble as to whether $4 million and $3 million are substantial sums are [sic] not in a minute I'm going to let the State refer to it. I cannot see that there should be any quibbling about this. I don't even think it would be that terrible to let the Jury know the whole amount. I just think it's a bit off the mark. As a matter of relevancy I wanted to stay [sic] substantial sum but I don't care for this quibbling about whether millions of dollars are substantial or not.

Record at 715. When asked again whether receiving the sought for amount of money would be like winning the lottery, Johnson replied, "Again, I repeat, I would not know. I have never won the lottery." Record at 717. The discussion continued:

Q: Okay. That—why don't you tell then the Ladies and Gentlemen of the Jury what kind of money we're talking about here? Why don't you tell them how much.

**OBJECTION: MR. MOSLEY:** I'll object to—

A: Judge—

**OBJECTION: MR. MOSLEY:** — it for the reasons stated at the bench and in the previous—

**THE COURT:** And for the reasons stated at the bench this time I'll overrule the objection. This is what was redacted. I didn't really want to throw the exact amount at you because I think it's—it's not that relevant, however, we now seem to have some dispute as to whether the amount in question is substantial or not. I thought we'd just cover up the specific amount by everybody agreeing to refer to it as substantial but since we now have a debate about what's substantial I will overrule the objection. The State may ask for what the specific amounts are.

Record at 717–18. Consequently, Johnson testified that he and Smothers were seeking $7 million in their civil tort claim. Record at 718.

 Here, the trial court initially determined that the actual amount of damages sought was inadmissible, but maintained that the amount sought could be characterized as substantial. During cross-examination, Johnson testified that the amount "could" be considered substantial and that he did not know if it was an amount equivalent to winning the lottery because he had never won the lottery. Record at 714, 717. By failing to acknowledge on cross-examination that the amount sought was substantial, Johnson opened the door to the specific amount sought. When a defendant interjects an issue in a trial, he opens the door to otherwise inadmissible evidence. *Tawdul v. State,* 720 N.E.2d 1211, 1217 (Ind.Ct.App.1999), *trans. denied.* In this case, Johnson opened the door to the otherwise inadmis-

sible amount of money. Thus, the trial court did not abuse its discretion when it eventually allowed the amount into evidence.

▆▆▆ Even if the trial court erred in excluding the 911 tapes or in admitting the specific amount of money sought in the tort claim, such errors would not dictate a reversal of his convictions. Errors in the admission of evidence are deemed harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995). An error is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. *Johnson v. State,* 671 N.E.2d 1203, 1207 (Ind.Ct.App.1996), *trans. denied.* Here, there was substantial independent evidence to support Johnson's convictions without the 911 tapes and despite the admission of the exact amount of damages sought in the tort claim. Specifically, Officer Johns testified that Johnson yelled and disturbed his attempt to issue and explain the citation to Smothers. Furthermore, Officer Sims testified that while Officer Johns tried to explain the citation to Smothers, Johnson stood in the doorway yelling. In addition, both officers testified that they warned the defendant repeatedly that if he did not refrain from his disruptive behavior he would be arrested. Therefore, any error in the admission or exclusion of evidence was harmless.

## II. Sufficiency of the Evidence

Johnson claims that his convictions were not supported by sufficient evidence. When reviewing the sufficiency of the evidence, we neither reweigh the evidence

nor judge the credibility of witnesses. *Mullins v. State,* 717 N.E.2d 902, 903 (Ind. Ct.App.1999). Instead, we look to the evidence most favorable to the State and all of the reasonable inferences to be drawn from that evidence. *Id.* We will affirm a judgment that is supported by substantial evidence of probative value. *Id.*

### A. Disorderly Conduct

Johnson alleges that there was insufficient evidence to support his conviction for Disorderly Conduct. To convict Johnson of Disorderly Conduct as a class B misdemeanor, the State was required to prove beyond a reasonable doubt that Johnson (1) recklessly, knowingly, or intentionally; (2) made unreasonable noise and continued to do so after being asked to stop. IND. CODE § 35-45-1-3. Johnson claims that the State failed to meet its burden. In particular, Johnson maintains that he was engaged in political speech at the time of his arrest and, therefore, his speech was protected by Article I, Section 9 of the Indiana Constitution.[1]

▆▆▆ A two-step inquiry is applied when we review the constitutionality of an application of the disorderly conduct statute. First, we must determine whether state action has restricted a claimant's expressive activity. *Shoultz v. State,* 735 N.E.2d 818, 825 (Ind.Ct.App.2000), *trans. denied,* (citing *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind.1996)). Second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak. *Id.* The first prong of the inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation. *Id.* (citing *Johnson v.*

---

1. Article I, Section 9 of the Indiana Constitution provides that "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

*State,* 719 N.E.2d 445, 449 (Ind.Ct.App. 1999)). Under the second prong, when reviewing the State's determination that expression was an "abuse" of the free speech right under the Indiana Constitution, we are typically only required to find that the determination was rational. *Whittington,* 669 N.E.2d at 1369.

▬▬▬ Expressive activity is political, for purposes of the responsibility clause of Article I, Section 9 of the Indiana Constitution, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Whittington,* 669 N.E.2d at 1370. However, "where an individual's expression focuses on the conduct of a private party—including the speaker himself or herself—it is not political." *Id.* We judge the nature of expression by an objective standard, and the burden is on the claimant to demonstrate that his or her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was non-political and review the constitutionality of a disorderly conduct conviction under standard rationality review. *Id.*

▬▬▬ Here, Johnson has met the first prong of the test by showing that the State restricted his expressive activity. *See Johnson v. State,* 719 N.E.2d 445, 449 (Ind. Ct.App.1999) (holding that this prong is satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation). Johnson argues that he meets the second prong of the test because he was engaged in political speech.

▬▬▬ If the speech leading to a disorderly conduct conviction is political, the State must demonstrate that it has not materially burdened the claimant's opportunity to engage in political speech. *Whittington,* 669 N.E.2d at 1369. Expression is not materially burdened if the State produces evidence that the speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Id.* at 1370. This requires evidence that the speech caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. *Price v. State,* 622 N.E.2d 954 (Ind.1993).

In this case, Officer Johns testified that he arrested Johnson for disorderly conduct because "he was interfering with me explaining the citation to his wife ... because of the loud noise he continuously made for ten minutes." Record at 85–6. In addition, he testified that:

> Mr. Johnson would not—would not let me explain the citation.... He was constantly screaming at me, screaming at his wife not to take it, "tear the "f---ing" thing up." "We're not going to pay it. We're not going to go to court." All this time myself and Officer Sims were turning around and asking him "Sir, please go back in the residence. This isn't worth going to jail over. If you continue this behavior, screaming and hollering, loud noises, we're going to arrest you for Disorderly Conduct." Mrs. Johnson was turning around and at one time said Mr. or "Bart, go back in the house. If they're wrong we'll settle it in court. Please go back in the residence."

Record at 332. He testified further that Johnson stated that "I didn't have a reason to be there, that I didn't have a warrant ..." Record at 361.

Here, Johnson commented on government action. While Officer Johns tried to explain the citation to Smothers, Johnson loudly told the officer that he did not have a reason to be there and that he did not have a warrant. In addition, he informed the officer that he and Smothers would not

pay any fine associated with the citation and that he would not go to court. During this exchange, he also told Smothers not to accept the citation and to tear up the citation. Johnson's speech was directed at the legality and appropriateness of Officer Johns' conduct toward Smothers. Johnson criticized the conduct of an official acting under color of law. Thus, this speech, which Johnson engaged in before his arrest, was protected political speech. *See Shoultz v. State,* 735 N.E.2d at 826–27 (holding that the defendant engaged in protected political speech when he asked the arresting police officer what the problem was and why he was bothering other people, demanded whether the officer had a warrant to be on the property, and requested that the officer leave if he did not have a warrant), *trans. denied.* Accordingly, Johnson has met the second prong of the test.

As a result, the State was required to produce evidence that Johnson's speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Whittington,* 669 N.E.2d at 1370. The State failed to present such evidence. Therefore, because this was protected political speech, there is insufficient evidence of disorderly conduct to support the conviction.

In conclusion, we note that the State also argues that Johnson's disorderly conduct conviction should be affirmed because Johnson's yelling interfered with "Officer Johns in his attempts to answer Smothers' questions regarding the citation ..." Appellee's Brief at 10. However, the disorderly conduct convictions that have previously been upheld because the defendant's unreasonably loud speech interfered with a police investigation, involved non-political speech. See *Whittington,* 669 N.E.2d at 1371; *Johnson,* 719 N.E.2d at 449. Non-political speech is examined under the ra-

tionality standard. Here, Johnson engaged in political speech. Because it was political speech, we cannot affirm the conviction for interference with the police investigation. Thus, we reverse Johnson's conviction for disorderly conduct.

## B. Resisting Law Enforcement

Johnson also contends that there was insufficient evidence to support his conviction for Resisting Law Enforcement. To convict Johnson of Resisting Law Enforcement as a class A misdemeanor, the State was required to prove beyond a reasonable doubt that Johnson (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered; (3) with a law enforcement officer; (4) while the officer was lawfully engaged in the execution of his duties as an officer. IND.CODE § 35–44–3–3(a).

Johnson contends that there was insufficient evidence to support the conviction for Resisting Law Enforcement because the State failed to establish that Officer Johns was lawfully engaged in his duties as an officer because he illegally entered Johnson's home without a warrant to arrest him. Johnson relies on *Adkisson v. State,* 728 N.E.2d 175 (Ind.Ct.App.2000) in arguing that his conviction should be reversed. The State counters that Officer Johns legally arrested Johnson and that *Adkisson* can be distinguished from this case. We agree with the State.

■ A law enforcement officer may arrest a person when the officer has probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence. IND. CODE § 35–33–1–1(a)(4). Furthermore, under the Fourth Amendment of the United States Constitution, when probable cause exists for a warrantless search, an officer may enter a defendant's home when exigent circumstances exist. *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

In *Adkisson,* police officers investigated a disturbance between neighbors at an apartment complex. When they arrived at Adkisson's door and knocked, she did not open the door. *Id.* at 176. They spoke to her from outside the closed door. The police officers then left Adkisson's door to question her neighbors and another officer questioned Adkisson. *Id.* At this time, the officer spoke to her while he stood just outside her now open door and Adkisson remained inside her apartment. *Id.* at 177. When Adkisson tried to shut her door, the officer put his foot in the doorway. *Id.* The officer then informed her that she was under arrest and entered her apartment to place her under arrest. *Id.* A struggle ensued between the two before the officer succeeded in handcuffing Adkisson. *Id.* Adkisson was convicted of resisting law enforcement. On appeal, we held that the police officer's forcible entry into Adkisson's home to obtain her arrest was unlawful. *Id.* at 178. We reasoned that her arrest was unlawful because her arrest was not initiated in a public place. *Id.*

 This case can be distinguished from *Adkisson.* In this case, when Officer Johns first approached Johnson's door, he knocked on the door and explained why he was there. Johnson then swore at the officer and "slammed" the door on him. Record at 324. Following this, Officer Johns returned to his car and called for backup. Smothers then motioned to Officer Johns from the porch encouraging him to return. Officer Johns then returned to the house and began writing the citation out to Smothers. At some point during their exchange, Johnson returned to the door of the home and began his verbal assault of the officer. Officer Johns testified that Johnson was "standing in the doorway consistently screaming and hollering and cussing." Record at 331. In *Adkisson,* the defendant remained inside

her apartment at all times and tried to keep the police officer outside her home by shutting the door. Here, Johnson was in the doorway, not still in the house as in *Adkisson.* Furthermore, on Officer John's second visit to the porch, Johnson opened the door on his own. Officer Johns did not knock for entry. Moreover, Johnson was engaged in a public confrontation with Officer Johns. He was verbally interjecting himself into the situation between the officer and his wife. In addition, contrary to the officer in *Adkisson* who approached the door without invitation, Smothers invited Officer Johns onto the porch by waving for him to return. Johnson and Smothers took several steps that distinguish this case from *Adkisson.* Therefore, we do not find *Adkisson* persuasive authority to support reversal in this case.

Here, Johnson was standing in the doorway in plain view interfering with Officer Johns' attempt to issue and explain the citation. Furthermore, Officer Johns initiated the arrest of Johnson while Johnson was in the doorway. When the officer entered the home, he was in hot pursuit of Johnson, following him from a public space to a private space. Thus, we find that Officer Johns was lawfully engaged in the execution of his duties when he arrested Johnson.

 Moreover, in Indiana the general rule is that "a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Casselman v. State,* 472 N.E.2d 1310, 1315 (Ind. Ct.App.1985) (quoting *Williams v. State,* 160 Ind.App. 294, 311 N.E.2d 619, 621 (1974)). Thus, even though we reversed Johnson's conviction for disorderly conduct, we need not reverse the resisting law enforcement conviction. In this case,

there was sufficient evidence to support Johnson's conviction for resisting law enforcement. Thus, we affirm his conviction for resisting law enforcement.

Judgment reversed in part and affirmed in part.

NAJAM, and KIRSCH, JJ., concur.