**Diana MADDEN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0208–CR–668.**

Court of Appeals of Indiana.

April 23, 2003.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Diana Madden was charged with two counts: resisting law enforcement,[1] a class A misdemeanor, and Disorderly Conduct,[2] a class B misdemeanor. Following a jury trial, Madden was found guilty of disorderly conduct and not guilty of resisting law

enforcement. Madden presents two issues for review:

1. Was there sufficient evidence to convict Madden of disorderly conduct?

2. Did the trial court err in accepting a not guilty verdict on the charge of resisting law enforcement and a guilty verdict on the charge of disorderly conduct?

We affirm.

The facts most favorable to the conviction reveal that on September 26, 2001, Officer Michael Eades of the Indianapolis International Airport Police was directing traffic to move away from the curb on the lower level. As he crossed the crosswalk, he motioned for some of the vehicles to drive across the crosswalk behind him while he held up pedestrian traffic on the crosswalk. Officer Eades directed Madden's husband, John Madden, to move forward and proceed around him. Instead of proceeding around Officer Eades, John drove straight ahead. Officer Eades held his hand out to stop John, but John kept coming to the point where Officer Eades had to step out in front of John, hold his hands up, and be more emphatic on what he wanted John to do. John stopped and Officer Eades warned him that when a police officer gave him a hand signal, he needed to stop. John was agitated that Officer Eades had stopped him and became argumentative and belligerent. He indicated that he was there to pick up Madden, that she would be out immediately, and that he did not see why he had to move away from the curb; he just wanted to be allowed to wait for her by the curb.

As Officer Eades was speaking to John, Officer Eades noticed Madden standing nearby and starting to jump up and down. Madden asked what Officer Eades was

---

1. Ind.Code Ann. § 35–44–3–3(a)(1) (West, PREMISE through 2002 1st Special Sess.).

2. Ind.Code Ann. § 35–45–1–3 (West, PREMISE through 2002 1st Special Sess.).

doing to her husband. When Officer Eades told Madden to please be quiet and maintain some sort of decorum, Madden refused. She became increasingly belligerent and called Officer Eades an "asshole". *Transcript* at 37. Madden did not want Officer Eades to talk to her husband and indicated that she did not appreciate how Officer Eades was dealing with him. Madden repeatedly called Officer Eades a "cock-sucker" and "mother-fucker". *Id.* Officer Eades then called another officer for assistance. John attempted to exit his vehicle, and Officer Eades told him to stay in the car, pushed the car door shut, and stood beside the car so John could not get out.

Officer Kurt Womack responded to Officer Eades's call for assistance. When he arrived, he observed Madden standing on the curb, shouting at Officer Eades as he tried to issue a citation to John. Officer Eades told Officer Womack to keep his eye on Madden while he issued a citation to John. Officer Womack eventually approached Madden and asked her to be quiet because she was causing a scene. They were at a crosswalk at one of the main exit points for the terminal and a crowd was gathering. Officer Womack asked Madden on several occasions to please be quiet and stop, or he was going to take her to jail. Because of the commotion, Officer Eades called for a female officer to come to the scene.

Officer Carol Young responded to Officer Eades's call. Officer Young arrived at the crosswalk and observed that a small crowd had gathered where Madden was engaged in a discussion with Officer Eades and Officer Womack. Madden saw Officer Young and said, "Oh, here comes that loud mouthed fucking bitch from traffic." *Transcript* at 77. Madden called Officer Young a "bitch" and a "cock-sucker" and continued cursing and threatening the offi-

cers in a loud voice. Officer Young observed Madden for a few minutes and then told Madden that she was getting very close to going to jail and that she should calm down and be quiet. Madden walked forcefully to Officer Young, and Officer Young was not sure if Madden was going to butt her in the chest, head butt her, or spit on her. Because she felt threatened by Madden, Officer Young put her hand on Madden's chest just below Madden's neck and extended her arm, forcing Madden to take a couple of steps backward. Madden turned toward the crowd and began screaming, "Police brutality. Police brutality. Did you see what this motherfucker did?" *Id.* at 94. Madden then started at Officer Young again. Officer Eades finally came over and said, "That's enough." *Id.* at 80–81. Officer Young informed Madden that she was under arrest and to put her hands behind her back. Officer Young attempted to handcuff Madden, but Madden struggled, continued to curse, and refused to put her hands together. Officer Eades assisted Officer Young, and Madden was eventually handcuffed.

### 1.

Madden first argues that there is insufficient evidence to support her disorderly conduct conviction because "the State failed to prove that Mrs. Madden's speech and behavior created a public nuisance, rose above the level of a fleeting annoyance, or was otherwise tortious", and thus, "it failed to show any link between her expression and any harm allegedly suffered." *Appellant's Brief* at 6. In particular, Madden maintains that she was engaged in political speech at the time of her arrest and, therefore, her speech was protected by article I, section 9 of the Indiana Constitution.

Article I, section 9 of the Indiana Constitution provides, "No law shall be passed,

restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." I.C. § 35–45–1–3 provides, in relevant part, "A person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor."

 When reviewing the constitutionality of an application of the disorderly conduct statute, we must first determine whether state action has restricted a claimant's expressive activity. *Shoultz v. State*, 735 N.E.2d 818 (Ind.Ct.App.2000). We conclude that this condition is satisfied by Madden's conviction for making unreasonable noise based on her swearing and screaming at police officers while her husband was being cited for a traffic violation. *See Johnson v. State*, 719 N.E.2d 445 (Ind. Ct.App.1999) (concluding that a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation constitutes a restriction of claimant's expressive activity by state action).

 Thus, we must next consider whether the restricted activity constituted an abuse of the right of free speech. *Shoultz v. State*, 735 N.E.2d 818. Generally, when reviewing the State's determination that a claimant's expression was an abuse of the right of free speech under the Indiana Constitution, we are required to find only that the determination was rational. *Id.* If the claimant's speech giving rise to the disorderly conduct conviction is political, however, the State must demonstrate that it has not materially burdened the claimant's opportunity to engage in political expression. *Id.*

Such expression is not materially burdened if the State produces evidence that the speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. To demonstrate the requisite level of harm, there must be evidence that the speech caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. Evidence of mere annoyance or inconvenience is insufficient.

*Shoultz v. State*, 735 N.E.2d at 825–26 (citations omitted).

 A claimant's expressive activity is political, for purposes of article I, section 9 of the Indiana Constitution, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Id.* The nature of the expression is judged by an objective standard, and the burden is on the claimant to demonstrate that his or her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was non-political and review the constitutionality of the disorderly conduct conviction under standard rationality review. *Id.*

 Here, Madden began screaming profanities at Officer Eades and other officers in response to a traffic citation issued to her husband. On cross-examination, Madden testified that she told Officer Womack this is "damned nonsense" and that "[Officer Eades] is writing him a ticket over goddam lies. The car is not in the cross-walk." *Transcript* at 151–52. At some point, while Officer Young was attempting to arrest Madden, Madden began screaming "Police brutality, police brutality." *Id.* at 94. We conclude that Madden's comments prior to her arrest were directed to the legality and appropriate-

ness of police conduct. Thus, Madden was engaged in political expression. *See Price v. State,* 622 N.E.2d 954 (Ind.1993) (where the defendant was found to have engaged in political speech when she screamed profanities at a police officer while objecting to the arrest of a third party); *Shoultz v. State,* 735 N.E.2d 818 (where defendant was found to have engaged in political speech when it was directed to the legality and appropriateness of police conduct toward a third party and constituted criticism of an official acting under color of law).

While we conclude that Madden's protests implicate a core constitutional value, noisy political expression is not shielded from all criminal liability. *Price v. State,* 622 N.E.2d 954.

> When the expressions of one person cause harm to another in a way consistent with common law tort, an abuse under § 9 has occurred. Imposing criminal liability for behavior which harms another individual would not materially burden the values protected by § 9 given that particularized harm to more readily identifiable interests would have to be shown before liability could attach.

*Id.* at 964.

The evidence favorable to the judgment indicates that Madden's conduct at the airport was loud enough to draw a crowd. Officer Eades testified that Madden was "extremely loud", and she used profanity "to the point where people were coming away from where they were initially, over to where we were at, to see what was going on; and I felt that it was getting

way far out of hand." *Transcript* at 39. As a result of Madden's conduct, traffic flow was disrupted and the attention of three police officers was diverted from their duties of maintaining safety at the airport. Madden's actions created a harm that rises above the level of a fleeting annoyance. Here, her actions caused particularized harm to a readily identifiable interest, specifically the safety of those at the airport. This intrusion upon the interest of others was of the type of harm I.C. § 35–45–1–3(2) was intended to remedy.[3] Section 9 was clearly not intended to create a private warrant by which an individual could impair the safety and security of private persons at an airport. Thus, we conclude that it would not be a material burden to restrict Madden's political expressions in this context.

### 2.

Madden also contends that trial court abused its discretion and committed reversible error "by entering a judgment of conviction based on evidence supporting inconsistent jury verdicts." *Appellant's Brief* at 13. She reasons that "the jury's verdicts were inconsistent since the same evidence which supported the jury finding Mrs. Madden not guilty of resisting law enforcement did support finding guilt as to the similarly worded (therefore overlapping) disorderly conduct charge." *Id.* at 14 (parenthetical in original).

When reviewing a claim of inconsistent jury verdicts, this court will take corrective action only when the verdicts are extremely contradictory and ir-

---

**3.** In fact, the legislature has specifically addressed the concern of disorderly conduct as it affects airport security by amending I.C. § 35–45–1–3 to include the following: "[T]he offense is a Class D felony if it adversely affects airport security and is committed in an airport (as defined in IC 8–21–1–1) or on the premises of an airport, including in a parking area, a maintenance bay, or an aircraft hanger." Because the circumstances surrounding the instant case occurred prior to the July 1, 2002 effective date of the amendment, Madden was charged and convicted of disorderly conduct as only a class B misdemeanor.

reconcilable. *Powell v. State*, 769 N.E.2d 1128 (Ind.2002). "Verdicts that initially may seem inconsistent on some level are not legally inconsistent if they can be explained by the fact-finding body's exercise of its power to assign the proper weight to and either accept or reject certain pieces of evidence." *Owsley v. State*, 769 N.E.2d 181, 184 (Ind.Ct.App.2002); *see Jackson v. State*, 540 N.E.2d 1232 (Ind.1989) (where defendant's conviction for one count of rape was not inconsistent with his acquittals on another count of rape that allegedly occurred at another time and place, although both counts were allegedly perpetrated against the same victim, because the jury was free to believe some portions of the victim's testimony and reject other portions).

■ Although the two charges are based upon the same basic set of facts and circumstances, the jury could have reasonably determined that Madden did not resist law enforcement, but did engage in disorderly conduct. The charging information for Madden's conviction of disorderly conduct contains two allegations. Specifically, it alleged that Madden recklessly:

(1) Engaged in fighting or in conduct that resulted in or was likely to result in serious bodily injury to a person or substantial damage to property, specifically: refusing and physically resisting to be placed in handcuff.

(2) Made unreasonable noise by: swearing and screaming at police officers directing traffic on the lower level of Indpls. International Airport during heightened security; and continued to do so after being asked to stop.

*Appendix* at 12. The charging information for Madden's conviction of resisting law enforcement stated that Madden:

knowingly and forcibly resisted, obstructed or interfered with Ptlmn. Carol A. Young a law enforcement officer employed by the Indpls. Airport P.D. while this officer was lawfully engaged in his [sic] duties as a law enforcement officer.

*Id.* at 13.

In finding Madden guilty of disorderly conduct, it was necessary for the State to prove only one of the two allegations, either that Madden engaged in "fighting or in tumultuous conduct" or that she made "unreasonable noise and [continued] to do so after being asked to stop". I.C. § 35–45–1–3. In weighing the evidence, the jury could logically conclude that Madden did not refuse or physically resist being placed in handcuffs, but did create a disturbance by being unreasonably noisy. Consequently, the jury could find that Madden was guilty of disorderly conduct not by engaging "in fighting or in tumultuous conduct", but by making "unreasonable noise". Accordingly, the jury could also determine that her actions did not amount to forcibly resisting, obstructing, or interfering with a law enforcement officer while the officer was lawfully engaged in the execution of her duties as an officer. We hold, therefore, that the verdicts are not inconsistent.

Judgment affirmed.

BROOK, C.J., and MATTINGLY–MAY, J., concur.