In the Matter of J.D., Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–0506–JV–575.

Court of Appeals of Indiana.

Jan. 27, 2006.

Michael E. Caudill, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, J.D., was adjudicated a delinquent child for committing Disorderly Conduct, a Class B misdemeanor [1] if committed by an adult. Following a dispositional hearing, the juvenile court awarded guardianship to the Department of Correction but suspended her commitment. Upon appeal, J.D. claims the juvenile court erred in adjudicating her delinquent because the conduct implicated was protected speech and furthermore, evidence of that conduct should have been suppressed.

1. Ind.Code § 35–45–1–3 (Burns Code Ed. Repl.2004).

J.D. also argues the court abused its discretion by ordering her to a suspended commitment in the Indiana Department of Correction.

We reverse and remand.

On February 1, 2005, Deputy Sherry Gibbons, who was working at the Marion County Guardian Home, called J.D., a seventeen-year-old resident there, into her office to discuss J.D.'s behavior. Deputy Gibbons testified her purpose in calling this meeting was to discuss a solution, not to arrest J.D. Deputy Gibbons testified that when she tried to talk to J.D., J.D. continually interrupted her, and her voice continued to "escalat[e]." Transcript at 11. According to Deputy Gibbons, J.D.'s talking reached the point where Deputy Gibbons could not have spoken and been heard without "screaming and yelling." Tr. at 12. Deputy Gibbons testified the conversation between the two was "breaking on the eardrums," and that she asked J.D. to stop talking several times, to no avail. Tr. at 12. At some point Deputy Gibbons arrested J.D. for intimidation and disorderly conduct. At the time of arrest, Deputy Gibbons told J.D. to stand up and put her hands behind her back. Deputy Gibbons then read J.D. her Miranda rights. Deputy Gibbons testified that thereafter she asked J.D. no further questions regarding an intimidation offense. No parent or guardian of J.D. was present at the time.

J.D. testified that she and Deputy Gibbons discussed in Deputy Gibbons's office the reasons behind her getting "written up." One reason was that J.D. continually opened her door, even though the staff told her to close it. J.D. testified she told Deputy Gibbons that she could not breathe with the door closed, and that there were no windows in the room. Other complaints against J.D. which she and Deputy Gibbons addressed included J.D.'s not taking her glasses off and J.D. having kleenex in her room. J.D. testified that although she insisted to Deputy Gibbons that she would not comply with some rules, she never yelled or "cussed" at her. J.D. further claimed that Deputy Gibbons did not tell her repeatedly to stop talking. J.D. testified that she did not remember being read her Miranda rights.

The State filed a petition alleging J.D. was a delinquent child based upon disorderly conduct, a Class B misdemeanor if committed by an adult. Following an April 11, 2005 denial hearing, the court adjudicated J.D. delinquent. Following a May 26, 2005 dispositional hearing, the court awarded guardianship of J.D. to the Department of Correction but suspended her commitment.

Upon appeal, J.D. challenges the sufficiency of the evidence to support her adjudication, claiming her statements to Deputy Gibbons, which served as the basis of her disorderly conduct adjudication, were protected speech, and further, that those statements were obtained in violation of her Miranda rights and should have been suppressed.

When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the offense beyond a reasonable doubt. *Johnson v. State*, 719 N.E.2d 445, 448 (Ind.Ct.App.1999). Upon review, we apply the same sufficiency standard used in criminal cases. *Id.* When reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Id.* We look to the evidence and the reasonable inferences therefrom that support the judgment. *Id.*

J.D.'s first challenge to the sufficiency of the evidence is that her statements were

protected speech under Article 1, Section 9 of the Indiana Constitution and therefore may not constitute disorderly conduct. Indiana Code § 35–45–1–3 provides in pertinent part, "A person who recklessly, knowingly, or intentionally ... makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct, a Class B misdemeanor." Article 1, Section 9 provides the following:

> "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

Our Supreme Court has created a two-step analysis for purposes of determining the constitutionality of an application of the disorderly conduct statute under Article 1, Section 9. *U.M. v. State*, 827 N.E.2d 1190, 1192 (Ind.Ct.App.2005) (citing *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind.1996)). A reviewing court must first determine whether state action has restricted a claimant's expressive activity. *Id.* If state action has restricted a claimant's expressive activity, the court must then decide whether the restricted activity constituted an "abuse" of the right to speak. *Id.*

With respect to the first step, a person's conviction for making unreasonable noise based solely upon his loud speaking during a police investigation qualifies as the restriction of an expressive activity. *Johnson*, 719 N.E.2d at 449. A delinquency adjudication based upon the same type of conduct is also State action restricting expressive activity. *Id.* We conclude J.D., who was arrested for disorderly conduct due to unreasonable noise and subsequently adjudicated delinquent upon that basis, has satisfied the first step.

With respect to the second step of this analysis, a claimant must prove that " 'the State could not reasonably conclude that the restricted expression was an abuse' " of J.D.'s right to speak, and thus, that the State could not properly proscribe her conduct, pursuant to its police power, through the disorderly conduct statute. *See Johnson*, 719 N.E.2d at 449 (quoting *Whittington*, 669 N.E.2d at 1369) (internal quotation omitted). One way a claimant may try to meet this burden is to show that her expressive activity was political. *Id.* If a claimant makes this showing, the State must demonstrate that its action has not materially burdened the claimant's opportunity to engage in political expression. *Id.*

In determining whether certain speech is political, our Supreme Court has stated the following:

> " '[T]he common feature of political expression is reference to state action.... Expressive activity is political ... if its point is to comment on government action, whether applauding an old policy or proposing a new one, or opposing a candidate for office or criticizing the conduct of an official acting under color of law.... In contrast, where an individual's expression focuses on the conduct of a private party—including the speaker himself or herself—it is not political." ' *Id.* (quoting *Whittington*, 669 N.E.2d at 1370).

We review the nature of expression by an objective standard, and the burden of proof is upon the claimant to demonstrate that his or her expression would have been understood as political. *Id.* "If the expression, viewed in context, is ambiguous, a reviewing court should find that the claimant has not established that it was political and should evaluate the constitutionality of any state-imposed restriction of the expression under standard rationality

review.'" *Id.* (quoting ·*Whittington,* 669 N.E.2d at 1370).

In claiming her speech was political, J.D. argues that she was commenting upon the actions of officials, criticizing both the Guardian Home house parent who had originally written her up and Deputy Gibbons. J.D. specifically argues that her statements were comments on "what the Guardian Home worker had done, why she didn't like the orders given by the Guardian Home worker and why she considered them unreasonable." Appellant's Brief at 9.

In *Whittington,* our Supreme Court determined that the defendant, who was arrested and charged with disorderly conduct for behaving in a loud and angry manner during an investigation, but who testified his statements were not directed toward the officer, was not engaging in political speech. 669 N.E.2d at 1370–71. The defendant's statements in that case were directed toward private parties, not the police, and had more to do with the defendant's frustration at the person who had summoned the police, the alleged lies of the witnesses, and his own conduct rather than with any state action. *Id.*

In *Johnson,* our court similarly held that a juvenile whose comments were arguably directed only at his own behavior was not engaging in political speech. 719 N.E.2d at 449. The juvenile in *Johnson* had stated that he was not going to attend the classes he was supposed to attend as a condition of his probation. *Id.* While the court recognized that it was not implausible that the juvenile's statements were a criticism of the State's probation policies, the court found it to be equally plausible that the juvenile was simply commenting on his own conduct, expressing that he could do "what he wants, when he wants."

*Id.* In the face of such ambiguity, the court held that the juvenile had not satisfied his burden of proof to demonstrate the speech was political and, applying a "rationality review," determined the juvenile's adjudication on the basis of disorderly conduct did not infringe upon his constitutional rights. *Id.* at 449–50.

In *Johnson v. State,* 747 N.E.2d 623, 631 (Ind.Ct.App.2001) and *Shoultz v. State,* 735 N.E.2d 818, 827 (Ind.Ct.App.2000), *trans. denied,* however, two separate panels of our court reversed convictions for disorderly conduct, holding that the speech upon which those convictions was based was political and that the State had not proved the necessary particularized harm. In *Johnson,* the defendant told an investigating officer that he did not have a warrant and to get off of his land. 747 N.E.2d at 630–31. He also protested a citation the officer was issuing and stated he would not go to court. *Id.* In *Shoultz,* the defendant asked an investigating officer why he was on property belonging to a motorcycle club, why he was harassing another individual on that property, and whether he had a warrant to be on the property. 735 N.E.2d at 821. In finding the defendants in those cases had engaged in political speech, our court recognized in both cases that the defendants, both of whom had questioned the authority of police to do what they were doing, were directing their speech to the "legality and appropriateness" of police conduct. *Johnson,* 747 N.E.2d at 631; *Shoultz,* 735 N.E.2d at 827.

Further, in *Madden v. State,* 786 N.E.2d 1152, 1156–57 (Ind.Ct.App.2003), *trans. denied,* although our court ultimately affirmed the defendant's disorderly conduct conviction,[2] it nevertheless concluded that she was engaged in protected political

---

**2.** The court held the defendant's actions caused particularized harm to a readily iden-

tifiable interest. *Madden,* 786 N.E.2d at 1157.

speech when she screamed at officers in protest of their attempt to issue her husband a traffic citation at the airport. In reaching this conclusion, our court found the defendant's comments were also directed at the "legality and appropriateness" of police conduct. *Id.*

In the more recent case of *U.M.*, our court reversed a disorderly conduct adjudication after finding that the speech upon which that adjudication was based had again been directed at the "legality and appropriateness" of police conduct and was therefore political speech. 827 N.E.2d at 1193. In *U.M.*, the juvenile at issue had called an investigating officer a racist and claimed that his friend could not keep his hands up as the officer had ordered him to do because his arms hurt. 827 N.E.2d at 1191–92.

■ In the case at hand, J.D.'s testimony regarding her discussion with Deputy Gibbons, the substance of which was uncontested upon cross-examination, was that she would not leave her door closed as she had been instructed to do because there were no windows in the room, and she was unable to breathe. J.D. further testified to telling Deputy Gibbons that she had already been to the health center due to her problems with breathing, and because of these problems, was adamant in her refusal to cooperate with the staff and shut her door when she was told to do so. J.D. also mentioned being "written up" for not taking off her glasses and for having kleenex in her room, but she gave no explanations and made no protests regarding these complaints.

We have already determined, under the first step of the *Whittington* analysis, that J.D., who was adjudicated delinquent, was restricted in her expressive activity. Under the second step, to determine whether

J.D. was engaged in political speech, we look to the content of her speech to decide whether J.D.'s statements were a commentary on government action. In light of the apparent trend to widen the scope of permissible political speech as evidenced by *U.M., Madden, Johnson*,[3] and *Shoultz*, we conclude that they were. Although J.D. told Deputy Gibbons that she refused to cooperate with authorities, which could be construed as a comment on her own, private action, her comments were, on the whole, more than an expression that she could do "what [s]he wants, when [s]he wants." *See Johnson*, 719 N.E.2d at 449. J.D.'s comments were largely an objection to the rules and living conditions of the Guardian Home, where she claimed she was being required to live in a closed room where she was unable to breathe. As such, J.D. was making a commentary on the legality and appropriateness of the rules and rule-enforcement in the Marion County Guardian Home and was therefore engaged in protected political speech.

■ If a claimant meets the burden of showing that her expressive activity was political in nature, the State must demonstrate that it did not materially burden her opportunity to engage in political expression. *U.M.*, 827 N.E.2d at 1192 (citing *Whittington*, 669 N.E.2d at 1369). The State action does not impose a material burden on expression if either the " 'magnitude of the impairment' " is slight, or the expression threatens to inflict " 'particularized harm' " analogous to tortious injury on readily-identifiable private interests. *Whittington*, 669 N.E.2d at 1370 (quoting *Price v. State*, 622 N.E.2d 954, 960 n. 7, 964 (Ind.1993)). If the right at issue, as impaired, would no longer serve the purpose for which it was designed, it has been materially impaired. *Price*, 622 N.E.2d at

**3.** 747 N.E.2d at 631.

960 n. 7. Clearly, the magnitude of impairment to the Article 1, Section 9 right to expression cannot be characterized as "slight" in this case, as the State's restriction of J.D.'s political expression directly frustrates the purpose of the right to free expression. Furthermore, the State presented no evidence in this case that J.D.'s speech inflicted particularized harm analogous to tortious injury on readily identifiable private interests. Deputy Gibbons testified she was the only person in the office with J.D., and the incident occurred inside of the Marion County Guardian Home. We conclude the State failed to prove that it did not impose a material burden on J.D.'s political expression. Accordingly, we find there is insufficient evidence to support J.D.'s adjudication based upon disorderly conduct that would be consistent with Article 1, Section 9 of the Indiana Constitution.

As we have found insufficient evidence to support J.D.'s adjudication, we conclude it unnecessary to address her evidentiary and sentencing claims.

The decision of the juvenile court is reversed, and the cause is remanded with instructions to vacate the adjudication.

KIRSCH, C.J., and DARDEN, J., concur.