

FILED

Feb 24 2017, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jefferson Jean-Baptiste, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 24, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1608-CR-1798 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Rebekah F. Pierson-Treacy, Judge <br><br> Trial Court Cause No. <br> 49G19-1604-CM-12899 |

**Najam, Judge.**

## Statement of the Case

Jefferson Jean-Baptiste appeals his conviction, following a bench trial, for resisting law enforcement, as a Class A misdemeanor. Jean-Baptiste raises a single issue for our review, but we address two issues on appeal:

1.    Whether the State presented sufficient evidence to support Jean-Baptiste's conviction.

2.    Whether the trial court committed fundamental error when it denied Jean-Baptiste his right to a jury trial without first securing his personal waiver of that right on the record.

The undisputed evidence demonstrates that a law enforcement officer, while attempting to serve a "civil arrest warrant"[1] on Jean-Baptiste at his home, unlawfully entered Jean-Baptiste's home. In light of that unlawful entry, Jean-Baptiste had the right, pursuant to Indiana Code Section 35-41-3-2(i), to reasonably resist the law enforcement officer. As that lawful resistance was the only basis for Jean-Baptiste's conviction, the State failed to present sufficient evidence to support his conviction and, thus, we reverse. We also hold, *sua sponte*, that the record unmistakably shows that the trial court failed to secure Jean-Baptiste's personal waiver of his right to a jury trial on the record. Accordingly, the trial court committed fundamental error under the Sixth Amendment to the United States Constitution when it denied Jean-Baptiste's jury's trial request. As such, for that additional reason we also reverse.

---

[1] The officer who served the warrant repeatedly identified it as a "civil arrest warrant," and the parties on appeal also use that terminology. We surmise that a "civil arrest warrant" is either a bench warrant or a writ of body attachment issued in a civil proceeding.

# Facts and Procedural History

[3] On April 5, 2016, Marion County Sheriff's Deputy James Russo went to Jean-Baptiste's residence to serve an arrest warrant stemming from a civil action against Jean-Baptiste. Deputy Russo drove his official vehicle to Jean-Baptiste's residence and wore his law enforcement uniform and badge. He approached Jean-Baptiste's front door and knocked loudly on it. Upon Jean-Baptiste opening the door, Deputy Russo identified himself as a law enforcement officer. Deputy Russo then explained that he had a civil arrest warrant for Jean-Baptiste, which Deputy Russo showed to Jean-Baptiste, and that he needed Jean-Baptiste to "turn around and place his hands behind his back." Tr. Vol. II at 11. Jean-Baptiste impolitely refused. Deputy Russo repeated his request "[n]umerous times," to no avail. *Id.*

[4] During their exchange, Deputy Russo stood "outside of the threshold to the doorway." *Id.* at 19. Jean-Baptiste, however, "was in the threshold of his doorway." *Id.* That is, as Deputy Russo later explained, during their exchange Deputy Russo was "outside of the residence" while Jean-Baptiste "was inside the residence." *Id.*

[5] In light of Jean-Baptiste's noncompliance, Deputy Russo told Jean-Baptiste that if Jean-Baptiste did not comply "he would . . . be tased." *Id.* at 12. Rather than comply, Jean-Baptiste "stood there." *Id.* Deputy Russo then reached across the threshold of the doorway "to grab [Jean-Baptiste's] right arm to place him into custody," but Jean-Baptiste "yanked" his arm away "forcefully." *Id.* Jean-

Baptiste then backed away from the door and into his residence. Asserting probable cause that Jean-Baptiste had just resisted arrest, Deputy Russo then fully entered Jean-Baptiste's residence and, thereafter, placed Jean-Baptiste into custody.

[6] The State charged Jean-Baptiste with resisting law enforcement, as a Class A misdemeanor, and disorderly conduct, as a Class B misdemeanor.[2] After a bench trial, the court found Jean-Baptiste guilty of resisting law enforcement and not guilty of disorderly conduct. The court then sentenced Jean-Baptiste accordingly. This appeal ensued.

## Discussion and Decision

### Issue One: Sufficiency of the Evidence

[7] Jean-Baptiste contends on appeal that the State failed to present sufficient evidence to support his conviction for resisting law enforcement. In our review of such claims, "we consider only the evidence and reasonable inferences most favorable to the conviction[,] neither reweighing evidence nor reassessing witness credibility." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). "We affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Id.*

---

[2] The facts underlying the disorderly conduct charge arose after Deputy Russo had placed Jean-Baptiste into custody.

[8] To prove that Jean-Baptiste committed Class A misdemeanor resisting law enforcement, the State was required to show that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer "while the officer [wa]s *lawfully* engaged in the execution of the officer's duties." Ind. Code § 35-44.1-3-1 (2015) (emphasis added). The only question in this appeal is whether a law enforcement officer who attempts to effect a civil arrest warrant is lawfully engaged in that duty when he crosses the threshold of the defendant's residence without permission or other legal justification and grabs the defendant. We hold he is not.

[9] The instant appeal is on all fours with this court's opinion in *Casselman v. State*, 472 N.E.2d 1310 (Ind. Ct. App. 1985). In *Casselman*, a sheriff's deputy appeared at the front door of Casselman's residence with a civil body attachment order for Casselman to appear before the court. The deputy knocked on the door, Casselman answered, and the deputy explained who he was and why he was there. Casselman impolitely refused to cooperate, and he then "tried to close the door" on the deputy. *Id.* at 1312. The deputy attempted to physically prevent the door from closing, and Casselman "pushed" the deputy away. *Id.* The two then engaged in "a shoving and grabbing match" before Casselman retreated into his home. *Id.* The deputy followed him inside and placed him into custody. The trial court convicted Casselman of resisting law enforcement, as a Class A misdemeanor.

[10] We reversed on appeal. We initially noted that a writ of body attachment or civil arrest warrant "is not a criminal arrest warrant." *Id.* We noted that "[t]his

distinction is important as we view the confrontation on the doorstep of Casselman's house." *Id.* at 1313.  Acknowledging the vitality of the Castle Doctrine in Indiana,[3] *see* I.C. § 35-41-3-2, we stated that, "in matters concerning merely civil process, the courts of this land have been zealous in protecting against the authority of the government to force entry into a private dwelling." *Casselman*, 472 N.E.2d at 1314.

[11]    Accordingly, we held that the deputy in *Casselman*

> was not lawfully engaged in the execution of civil process when, while attempting to effect service of the writ, he prevented Casselman from closing the door to his home.  Casselman had the right to close the door; he engaged in no resistance, obstruction[,] or interference other than to attempt to assert that right.  The scuffle between Casselman and [the deputy] arose only after [the deputy] unlawfully entered Casselman's doorway to prevent Casselman from closing the door.

*Id.* (citations omitted).  Further, we expressly rejected the State's argument that, the lawfulness of the deputy's actions aside, Casselman had no right to resist. *Id.* at 1316.  Specifically, we stated that, "assuming Casselman knew that civil arrest was intended, . . . where the arrest is attempted by means of a forceful and unlawful entry into a citizen's home . . . such an entry represents the use of excessive force." *Id.*

---

[3]  "The Castle Doctrine arises out of 'the common law rule that a man's home is his castle, which gives him the right to reasonably resist unlawful entry.'" *Cupello v. State*, 27 N.E.3d 1122, 1124 n.1 (Ind. Ct. App. 2015) (quoting *Barnes v. State*, 953 N.E.2d 473, 474 (Ind. 2011), *superseded by statute*, I.C. § 35-41-3-2(a)).

[12]     We also recognize that the Indiana General Assembly recently reaffirmed its commitment to Castle Doctrine as the policy in Indiana. *See* I.C. § 35-41-3-2(a); *see also Cupello v. State*, 27 N.E.3d 1122, 1132 (Ind. Ct. App. 2015) (noting that recent amendments to Indiana Code Section 35-41-3-2 "reaffirmed . . . the Castle Doctrine"). In particular, Indiana Code Section 35-41-3-2(i) provides that "[a] person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to . . . prevent or terminate the public servant's unlawful entry of . . . the person's dwelling . . . ."

[13]     In light of *Casselman* and Section 35-41-3-2, we hold that the State failed to present sufficient evidence to support Jean-Baptiste's conviction for resisting law enforcement. The undisputed evidence shows that Deputy Russo was "outside of the residence" while Jean-Baptiste was "inside the residence" when Deputy Russo, without permission or other legal justification, reached across the threshold and grabbed Jean-Baptiste. Tr. Vol. II at 19. As a matter of law, Deputy Russo unlawfully entered into Jean-Baptiste's residence. *Casselman*, 472 N.E.2d at 1316. Thus, Deputy Russo was not lawfully engaged in the exercise of his duties, which permitted Russo, under Section 35-41-3-2(i), to use reasonable force to prevent or terminate Deputy Russo's entry. And that is what Jean-Baptiste did when he "yanked" his arm away "forcefully" from Deputy Russo's grasp. Tr. Vol. II at 12.

[14]     Nonetheless, the State argues that *Casselman* is inapposite because "Deputy Russo did not focibl[y] enter [Jean-Baptiste's] residence . . . ." Appellee's Br. at 12. We cannot agree that Deputy Russo acted without force when he reached

across the threshold and, by his own admission, "grab[bed]" Jean-Baptiste's right arm. Tr. Vol. II at 12. And insofar as the State's argument is that an officer may not stick his foot in the doorway to prevent the resident from closing the door, *see Cupello*, 27 N.E.3d at 1130, but the officer may nonetheless grab a resident in the threshold of his doorway, we reject that distinction.

[15] The State also argues that the threshold "is essentially . . . a public place." Appellee's Br. at 12. The Indiana Supreme Court thinks not:

> For purposes of the Fourth Amendment, . . . the threshold of a home is the line that law enforcement officers cannot transgress without judicial authorization. . . . [T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant.

*Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind. 1999) (quotation marks omitted); *see also Cupello*, 27 N.E.3d at 1130 ("Constable Webb unlawfully entered Cupello's dwelling by placing his foot within the threshold of the apartment door without lawful justification."). The State's argument on this issue is without merit.

[16] Finally, the State argues that the most factually analogous case to Jean-Baptiste's is not *Casselman* but, rather, *Johnson v. State*, 747 N.E.2d 623 (Ind. Ct. App. 2001). We cannot agree. In *Johnson*, an officer went to Johnson's residence "to issue . . . a dog restraint violation." *Id.* at 626. While engaging with Johnson's wife on the porch of the residence, Johnson engaged in disorderly conduct directed at the officer from "the doorway" of the residence.

*Id.* The officer then "grabbed [Johnson's] arm in order to arrest him," but Johnson pulled his arm back and retreated into his residence. *Id.* The officer followed and arrested Johnson.

[17] We affirmed his convictions for resisting law enforcement and disorderly conduct. In analyzing whether the officer had acted lawfully for the resisting law enforcement charge, we stated that "Johnson was in the doorway, not . . . in the house . . . ." *Id.* at 632. We also relied on the fact that "Johnson was engaged in a public confrontation" with the officer prior to his resisting arrest. *Id.* And we noted that Johnson's wife had "invited [the officer] onto the porch . . . ." *Id.*

[18] None of those facts are present here. Unlike in *Johnson*, the undisputed evidence here unequivocally shows that Jean-Baptiste was "inside the residence." Tr. Vol. II at 19. Further, there is no evidence that Jean-Baptiste had engaged in disorderly conduct prior to or contemporaneous with the facts underlying his resisting law enforcement conviction. And neither did Jean-Baptiste or any other resident affirmatively invite Deputy Russo onto the property. As such, we reject the State's argument that *Johnson* rather than *Casselman* is the more analogous authority here.

[19] In sum, we hold that the State failed to present sufficient evidence to support Jean-Baptiste's conviction for resisting law enforcement, as a Class A misdemeanor. The undisputed evidence inescapably demonstrates that Deputy Russo was not lawfully engaged in the exercise of his duties when he reached

across the threshold of Jean-Baptiste's residence without permission or other legal justification and grabbed him. As Deputy Russo was not lawfully engaged in the exercise of his duties, as a matter of law Jean-Baptiste had the right to reasonably resist Deputy Russo, which Jean-Baptiste did.[4] Thus, we reverse Jean-Baptiste's conviction.

### *Issue Two: Jury Trial Waiver*

[20] Even if we were to agree that the State presented sufficient evidence to support Jean-Baptiste's conviction, we would still be obliged to reverse, *sua sponte*, because the trial court committed fundamental error when it denied Jean-Baptiste's right to a jury trial without first eliciting a personal waiver from him on the record. As we explained in *Casselman*:

> Criminal Rule 22 provides:
>
>> A defendant charged with a misdemeanor may demand a trial by jury by filing a written demand therefor not later than ten (10) days before his scheduled trial date. The failure of a defendant to demand a trial by jury as required by this rule shall constitute a waiver by him of trial by jury unless the defendant has not had at least fifteen (15) days advance notice of his scheduled trial date and of the consequences of his failure to demand a trial by jury.
>
> The state urges that since Casselman failed to demand a jury as provided by the rule, no error was committed. The argument is

---

[4] In light of our holding, we need not reach the State's further argument that Deputy Russo was permitted to enter Jean-Baptiste's residence under a theory of hot pursuit.

specious. If the rule is, itself, to pass constitutional muster it must meet the requirements of *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 that *waiver of such a fundamental right cannot be presumed from a silent record*. . . .

472 N.E.2d 1310, 1311 n.1 (Ind. Ct. App. 1985) (emphasis added); *see also Fiandt v. State*, 996 N.E.2d 421, 425-28 (Najam, J., dissenting), *trans. not sought*. Further, it is beyond dispute that the Sixth Amendment requires the waiver of the right to a jury trial to be made personally by the defendant. *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984).

[21] Here, the record shows that Jean-Baptiste had been advised of Criminal Rule 22 and had not complied with it. Rather than complying with Rule 22, on the day of his bench trial Jean-Baptiste requested a trial by jury. The trial court denied his request solely on the basis of Jean-Baptiste's noncompliance with Rule 22. Tr. Vol. II at 7. That was fundamental error. Absent his personal waiver of his right to a jury trial on the record, the court was required under the Sixth Amendment to presume that a defendant charged with a Class A misdemeanor desired a jury trial, not a bench trial. *See Fiandt*, 996 N.E.2d at 425-28 (Najam, J., dissenting); *see also Holly v. State*, 681 N.E.2d 1176, 1177-78 (Ind. Ct. App. 1997) (Rucker, J.) ("Sentences exceeding six months may not be imposed absent a jury trial or [a constitutionally sufficient] waiver thereof."). Only after that personal waiver on the record is secured may the trial court then operate under Rule 22. As that did not happen here, the trial court committed fundamental error when it denied Jean-Baptiste his right to a jury trial, and for that additional reason we reverse his conviction.

Reversed.

Bailey, J., and May, J., concur.