**Latoya BLACKMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0610–CR–893.**

Court of Appeals of Indiana.

June 26, 2007.

---

William F. Thoms, Thoms & Thoms, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Latoya Blackman ("Blackman")[1] appeals her conviction after a bench trial for disorderly conduct, as a class B misdemeanor.[2]

We affirm.

### ISSUES

1. Whether sufficient evidence existed to support Blackman's conviction.

2. Whether Blackman's conduct constituted political speech protected under the Indiana Constitution and, therefore, cannot be the basis for a charge of disorderly conduct.

### FACTS

On May 20, 2005, at approximately 6:00 p.m., Blackman was sitting in the back seat of a vehicle parked in front of 1364 West 26th Street in Indianapolis.[3] Blackman's brother was seated next to her, and her sister was in the front seat. Indianapolis Police Department Officer Brent Brinker ("Officer Brinker") approached the vehicle and arrested Blackman's brother on narcotics charges pursuant to an ongoing investigation. Afterwards, Officer Brinker asked Blackman's brother to sit on the curb, while Blackman and her sister remained in the car. Given the number of female subjects at the scene, Officer Brinker requested a female backup officer and, soon thereafter, Officer Emily Perkins ("Officer Perkins") arrived to assist.

Officer Brinker advised Officer Perkins that he had observed a "substantial amount of forward movement" in the backseat of the vehicle, and asked Officer Perkins to conduct a pat-down search of Blackman's outer clothing. When Officer Perkins asked Blackman to exit the vehicle, Blackman became "belligerent" and

---

1. The parties have each advanced a different spelling of the Appellant's surname. We will proceed with the spelling used by the Appellant, and refer to her herein as "Blackman."

2. Ind.Code § 35–45–1–3.

3. Unbeknownst to the police officers at the time of this incident, the underlying events occurred in front of the home of Blackman's grandmother.

"loud." Tr. 8. Both during and after the pat-down search, she repeatedly shouted "this is f* * *ing bulls* * *," and that "this [is] unconstitutional." *Id.* She also asked, "[W]hy are you treating us like animals?" and "Why are you talking down to me?" *Id.* at 15. Officer Perkins' search yielded no evidence, and she instructed Blackman to leave the scene. Blackman refused, shouting that "she had every right to be there, that she did not have to leave the scene." *Id.* at 8.

Blackman raised her voice increasingly louder, ultimately shouting "loud[ly] enough to draw a crowd." *Id.* at 9. She created a scene in public, on the sidewalk, prompting passersby to stop and ask questions. "[P]eople [came] out of their houses. Uh it was quite a scene. There was [sic] people driving by that slowed down, rolled down their windows … Ms. Blackman refused to quiet her voice." *Id.* at 13. Despite being asked to leave at least five times, Blackman remained at the scene.

At one point, Blackman stepped aggressively close to Officer Perkins and shouted at her, pointing her finger in Officer Perkins' face. Officer Perkins advised Blackman that she was going to be arrested unless she left the scene. Officer Brinker intervened and also advised Blackman to leave. Blackman turned to walk away and seemingly complied. However, when Officer Brinker turned his back to Blackman, she followed him, still shouting and pointing her finger at him. Officer Perkins then handcuffed Blackman and advised her she was being arrested for disorderly conduct.

On May 21, 2006, Blackman was charged with disorderly conduct as a class B misdemeanor. Her trial was conducted on September 14, 2006. After the State rested its case, the defense moved for dismissal of the charge, arguing that Blackman's speech was protected political speech.

The trial court denied the defense's motion. After the close of the defense's case, the trial court found Blackman guilty and imposed a one hundred eighty day sentence. The court ordered one hundred seventy-six days suspended to probation and awarded four days of jail-time credit. Blackman now appeals.

## DECISION

Blackman argues that the evidence is insufficient to support her conviction of disorderly conduct. She also contends that her right to speak under Article 1, Section 9, was violated by application of the disorderly conduct statute to the facts of this case.

### 1. *Sufficiency of the Evidence*

Blackman contends that the noise generated by her outbursts was "not unreasonable under ʲthe circumstances," and therefore, she argues, the evidence is insufficient to support a finding of disorderly conduct. Blackman's Br. 3. We disagree.

Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing such a claim, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Buckner v. State,* 857 N.E.2d 1011, 1017 (Ind.Ct.App. 2006). A mere reasonable inference from the evidence supporting a verdict is enough for us to find evidence to be sufficient. *Id.*

Indiana Code section 35–25–1–3 provides, in pertinent part: "A person who recklessly, knowingly, or intentionally … makes unreasonable noise and continues to

do so after being asked to stop ... commits disorderly conduct."

■ The facts before us plainly indicate that Blackman made unreasonable noise and continued to do so after being repeatedly asked to stop. In her brief, Blackman contradicts her trial testimony that she "wasn't yelling" at the officers. Tr. 22. To the contrary, she asserts,

> [c]ertainly being subjected to probably an unlawful search,[4] being treated like an animal and being talked down to would cause a person to protest such actions in a voice louder than normal. Being ordered to leave when a person had done nothing wrong other than to protest these actions would more likely cause them to become excited and raise their voice.

Blackman's Br. 6. Blackman seems to suggest that under the circumstances, she was justified in raising her voice. While this may be, Blackman certainly was *not* entitled to raise her voice beyond reasonable levels. "[T]o support a conviction for disorderly conduct, the State must prove that a defendant produced decibels of sound that were too loud for the circumstances." *Johnson v. State*, 719 N.E.2d 445, 448 (Ind.Ct.App.1999).

The facts most favorable to the judgment indicate that the sheer volume of Blackman's outbursts disrupted the officers' investigation and attracted unwanted attention. The officers repeatedly asked Blackman to lower her voice and to leave the scene of their investigation. Blackman defiantly ignored their requests and shouted even louder. The ensuing commotion drew a crowd; a neighborhood resident emerged from her backyard; other neighbors emerged from their homes; passing drivers slowed and rolled down their car windows; and pedestrians stopped to make inquiries of the officers.

Blackman's argument that "it is more likely that curiosity rather than annoyance was the basis for [this attention]" is simply a request that we reweigh the evidence. Blackman's Br. 5. This we will not do. We find that there is sufficient evidence to support Blackman's conviction for disorderly conduct because she produced decibels of sound that were too loud for the circumstances.

### 2. Article 1, Section 9 of the Indiana Constitution

Next, Blackman contends that her statements were protected speech under Article 1, Section 9 of the Indiana Constitution and, thus, may not constitute disorderly conduct. Again, Indiana Code section 35–25–1–3, provides: "A person who recklessly, knowingly, or intentionally ... makes unreasonable noise and continues to do so after being asked to stop ... commits disorderly conduct, a Class B misdemeanor."

Article 1, Section 9 of the Indiana Constitution provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." The right of free speech protected in Section 9 is "expressly qualified by the phrase 'but for the abuse of that right, every person shall be responsible.'" *J.D. v. State*, 859 N.E.2d 341, 344 (Ind.2007).

■ When reviewing whether the State has violated Article 1, Section 9, we employ the following two-step analysis. *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind.1996). First, we must determine

---

4. Blackman does not argue that, under the circumstances of this case, the officers lacked reasonable suspicion to conduct the limited pat-down search.

whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak. *Id.*

Under the first prong of the analysis, Blackman must demonstrate that the State restricted her expressive activity. "[T]he right to speak clause focuses on the restrictive impact of state action on an individual's expressive activity." *Id.* at 1368. Article 1, Section 9 is implicated when the State poses a direct and significant burden on the claimant's expression. *Id.* The record indicates that Blackman was arrested for disorderly conduct after she shouted and swore at the officers. *See Johnson,* 719 N.E.2d at 449 (holding that a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation constitutes state action restricting the claimant's expressive activity). Blackman has established that the State restricted her expressive activity.

In order to meet the second prong, Blackman must prove that "the State could not reasonably conclude that the restricted expression was an 'abuse' of [her] right to speak, and therefore, the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute." *Id.* Generally, when we review the State's determination that a claimant's expression was an abuse of the right of free speech under the Indiana Constitution, we need only find that the determination was rational. *Madden v. State,* 786 N.E.2d 1152, 1156 (Ind.Ct.App. 2003). However, if the expressive activity that precipitated the disorderly conduct conviction was political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. *Id.*

Where the claimant successfully demonstrates that his speech was political, the burden shifts to the State to show that it did not materially burden the claimant's opportunity to engage in political expression. *New v. State,* 858 N.E.2d 255, 256 (Ind.Ct.App.2006). "The State can do so by producing evidence that the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests." *U.M. v. State,* 827 N.E.2d 1190, 1192 (Ind.Ct.App.2005). In order to demonstrate such particularized harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. *Madden,* 786 N.E.2d at 1156. Evidence of mere annoyance or inconvenience is not sufficient. *Id.*

Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law. *U.M.,* 827 N.E.2d at 1192 (citing *Whittington,* 669 N.E.2d at 1370). However, where the individual's expression focuses on the conduct of a private party, including the speaker himself, it is not political. *Id.* We apply an objective standard when we review the nature of expression. *Id.* The claimant bears the burden of proving that the expressive activity was not an abuse of his right to free speech by showing that his expression was political. *Id.* If the expression is ambiguous, we must find that the expression was not political and must review the State's restriction of the expression under standard rational review. *U.M.,* 827 N.E.2d at 1192–93.

Blackman argues that her outbursts were political speech because she was commenting on the government action. We disagree. On one hand, some of Blackman's outbursts were political in nature, because she was criticizing the

conduct of the officers. Specifically, her comment—"this [is] unconstitutional"—was directed to the "legality and appropriateness" of the pat-down search and the repeated orders that she leave the scene of the investigation. Tr. 8; *Shoultz v. State*, 735 N.E.2d 818, 826–7 (Ind.Ct.App. 2000). On the other hand, Blackman's comment that "she had every right to be there, that she did not have to leave the scene," constituted expression focused on the conduct of a private party, Blackman herself. *Id.* Here, Blackman was saying nothing about State action. Instead, "this comment could be construed to reflect nothing more than [Blackman's] opinion that [s]he can do what [s]he wants, when [s]he wants." *Johnson*, 719 N.E.2d at 449.

This dual nature of Blackman's outbursts, coupled with her unreasonable noise levels, her refusal to comply with the officers' instructions, and the resulting disruption of the police investigation, lead us to conclude that although Blackman's expressive activity began as political speech, it did not end as such. Moreover, we are particularly sensitive to attending policy considerations regarding the extent to which police officers must endure the claimant's insults, threats to their personal safety, and the disruption of their investigations, in the name of preserving the claimant's right to free speech.

Based on the facts before us and the aforementioned policy considerations, we conclude that Blackman's speech was ultimately ambiguous as to whether she was commenting on her own conduct or that of the officers. Accordingly, we find that Blackman's expression was not political and is therefore subject to rational review.

■■■ We rely upon our Supreme Court's recent holding in *J.D. v. State*, 859 N.E.2d 341, 341 (Ind.2007), in which the Court distinguished the defendant's con-

duct from that of the defendant in the seminal case of *Price v. State*, 622 N.E.2d 954, 954 (Ind.1993), to support our finding that Blackman's conduct constituted an abuse of her right to speak. In *J.D.*, a Marion County deputy sheriff was investigating complaints that the defendant, J.D., had intimidated a staffer in the Marion County Guardian's Home. During the investigation, J.D. complained about having been written up by the staffer and objected to various facility rules. Throughout the exchange, J.D. raised her voice to deafening levels, and impeded the officer's efforts to conduct a conversation with her. "The officer described the volume of J.D.'s voice as 'breaking on the eardrums.'" *J.D.*, 859 N.E.2d at 343. The officer repeatedly requested that J.D. lower her voice. When J.D. failed to comply and "continued to talk over [the officer]," the officer arrested J.D. for disorderly conduct. *Id.*

The State filed a petition alleging that J.D. was a juvenile delinquent; the Marion County juvenile court subsequently adjudicated J.D. as such. On appeal, J.D. contended that her remarks were protected political speech and therefore, could not provide a proper basis for a charge of disorderly conduct. We agreed and reversed the trial court's judgment. Our Supreme Court granted transfer and held as follows, distinguishing *J.D.* from *Price*:

> In *Price*, the defendant loudly, and with profanity, objected first to the arrest of another person, and then objected to a police threat to arrest her for her protest. She was charged with two counts of obstructing or interfering with a law enforcement officer by force, public intoxication and disorderly conduct. After a bench trial, she was acquitted on the interfering counts but convicted of public intoxication and disorderly conduct. We reversed the disorderly conduct con-

viction, finding that her noisy protest about the police officer's conduct toward another person constituted political speech, that any harm suffered by others did not rise 'above the level of a fleeting annoyance,' and that, given the large number of officers and civilians assembled and the level of the commotion before Price's arrival, 'the link between her expression and any harm that was suffered' was not established.

The present case [*J.D.*] is distinguishable from *Price*, where the defendant's speech did not obstruct or interfere with the police. Here, J.D.'s alleged political speech consisted of persistent loud yelling over and obscuring of [the officer's] attempts to speak and function as a law enforcement officer. Because it obstructed and interfered with [the officer], J.D.'s alleged political speech clearly amounted to an abuse of the right to free speech and thus subjected her to accountability under Section 9.

*Price*, 622 N.E.2d at 964.

Here, in filing the charges, the State could have reasonably concluded that Blackman's expressive activity because of its volume, the attention that it attracted, the potential threat to officer safety, and the ensuing interference with the officers' investigation, "was a threat to peace, safety, and well-being," and therefore, was an abuse of Blackman's right to speak. *Whittington*, 669 N.E.2d at 1371.

After Officer Brinker arrested Blackman's brother, he observed "substantial ... forward movement" in the back seat of the car where Blackman was seated. Tr. 7. Officer Brinker asked Officer Perkins to conduct a pat-down search of Blackman's outer clothing. Blackman does not challenge the limited pat-down search as unconstitutional under the Fourth Amendment. Simply stated, Blackman was in the vehicle with her brother, a narcotics crime

suspect, at the time of the latter's arrest. Given the fact that there were a total of three subjects in the vehicle, and further, because Officer Brinker had observed furtive movements in the car, Officer Brinker acted reasonably when he ordered a pat-down search for purposes of officer safety.

After Officer Perkins asked Blackman to get out of the car, Blackman immediately began to shout. Officer Perkins' limited pat-down search yielded no contraband or weapons, and Blackman was free to go. By the time Officer Perkins instructed Blackman to leave the scene of the investigation, Blackman had become belligerent, raising her voice increasingly louder and louder and using profane language. The ensuing commotion "dr[e]w a crowd" and created a scene. Tr. 9. People emerged from their homes, drivers slowed down their vehicles and rolled down their windows, and passersby stopped to make inquiries of the officers. Due to Blackman's conduct, the officers' attention was diverted, as in *J.D.*, from conducting their investigation to monitoring and managing the scene that Blackman had created.

Blackman continued to argue with the officers, defying their instructions that she leave the scene of the investigation. The record indicates that the officers asked Blackman to leave the scene at least five times to no avail. Blackman also displayed aggressive behavior towards the officers, standing close to them while shouting, and pointing her finger in Officer Perkins' face. When Blackman took a similarly aggressive stance and advanced towards Officer Brinker, whose back was turned to her, Officer Perkins intervened and arrested Blackman for disorderly conduct.

Despite the fact that Blackman ignored, endangered, undermined and insulted them, Officers Brinker and Perkins conducted themselves in a manner that was

above reproach. The officers never prevented Blackman from expressing her views. Instead, they simply asked that Blackman leave the scene so that they could work unimpeded. The right to speak is undeniably a right of paramount importance under our Constitution. That said however, individuals who have expressed opinions, even protected opinions, must quiet down thereafter to enable police officers to do their work. The fact that one is engaging in protected political speech does not obviate one's responsibility to act in a civilly responsible manner.

Police officers conducting a legitimate investigation must be able to perform their duties without unreasonable interruption. *Johnson,* 719 N.E.2d at 449. Under the facts of this case, we find that the State could have rationally concluded that where Blackman obstructed and interfered with the officers' attempts to function as law enforcement officer, her conduct constituted an abuse of the right to speak and fell within the State's police power. Accordingly, Blackman's arrest for disorderly conduct did not violate Article 1, Section 9 of the Indiana Constitution.

Affirmed.

MATHIAS, J., concurs.

KIRSCH, J., concurs with separate opinion.

KIRSCH, Judge, concurring.

I concur. I write separately only to note what I believe is a fundamental shift in Indiana's constitutional jurisprudence.

In the landmark case of *Price v. State,* 622 N.E.2d 954 (1993), our Supreme Court held that Article I, Section 9 provides protections to Indiana citizens of the rights of freedom of expression independent of its federal counterpart and that the State may not materially burden political expression, which is a core value under Indiana's Bill of Rights. Price had been convicted of disorderly conduct for "screaming" profanities at police officers while objecting first to a colleague's arrest and then to her own. After several verbal exchanges, police directed Price to desist and threatened her with arrest for disorderly conduct, to which she responded "F—— you. I haven't done anything." The Court reversed the conviction holding that Price's loud and profanity-laced complaints about police officers conducting an arrest of a third party and then of Price herself was political expression which the State could not materially burden.

In *J.D. v. State,* 859 N.E.2d 341 (Ind. 2007), our Supreme Court held that speech, albeit political, was not entitled to constitutional protection under Article I, Section 9 of the Indiana Constitution where the speech "consisted of persistent loud yelling over and obscuring of [the arresting officer's] attempts to speak and function as a law officer." *Id.* at 344. The Court concluded that the speech "clearly amounted to an abuse of the right to free speech" and thus subject to accountability under Article I, Section 9.

I believe *J.D.* tacitly overrules *Price.* In *Price,* Justice Dickson dissented "strenuously disagreeing" with the majority[5] and arguing that Price's speech was not protected by Article I, Section 9 because it constituted an abuse of the right of freedom of expression[6]—the same rationale

---

**5.** "The essence of the majority opinion is that a person facing arrest who protests by screaming vulgar profanities into the face of an arresting officer does not violate Indiana's disorderly conduct statute prohibiting unrea-

sonable noise. I strenuously disagree." *Price,* 622 N.E.2d at 967 (Dickson, J., dissenting).

**6.** "Our constitution-makers did not intend protection for rude or vile language, but in-

utilized by the Court in *J.D.* where Justice Dickson was writing for a unanimous Court. There is no discussion in *J.D.* of core values or material burdens, only the conclusion that J.D. had abused the right of free expression. Finally, although the Court in *J.D.* distinguishes *Price* on the grounds that the harm in *Price* "did not rise 'above the level of a fleeting annoyance,'" *J.D.* 859 N.E.2d at 344, in his dissent in *Price*, Justice Dickson made no mention of a "fleeting annoyance" but rather observed that "the majority posits that *unreasonable noise which would otherwise constitute disorderly conduct* must be shielded from criminal penalty if it is an expression of 'concern about the role of police'" and concluded that the "message sent by today's opinion is that persons confronted with imminent arrest may now react with *unlimited noise and vulgarity*—so long as such profanities include a protest about police conduct." *Price,* 622 N.E.2d at 969 (Emphasis added.).

Without regard to whether *J.D.* is the death knell of *Price* and Indiana's independent constitutional jurisprudence, Blackman's speech here falls within that determined to be abusive by the Court in *J.D.* Accordingly, I concur in the majority's decision.

stead assumed that citizens would remain civilly and criminally responsible for abuse of the right." *Id.* at 968.