**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 16 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ONTORIO FRYE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-CR-793 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Leah Cannon, Judge *Pro Tempore*
Cause No. 49F10-1307-CM-44278

**April 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

At approximately 9:00 a.m. on July 7, 2013, Appellant-Defendant Ontorio Frye was involved in a traffic accident when he drove his vehicle 125 to 150 feet off a roadway and crashed into a tree. Frye was injured and his vehicle sustained extensive front-end damage as a result of the accident. When officers arrived on the scene, they determined that Frye was intoxicated. Officers also observed that Frye behaved in an increasingly belligerent and loud manner.

Frye was subsequently charged with and convicted of Class A misdemeanor operating a vehicle while intoxicated and Class B misdemeanor disorderly conduct. On appeal, Frye contends that the State presented insufficient evidence to sustain his convictions. Further, with respect to his disorderly conduct conviction, Frye alternatively contends that his conviction cannot stand because his allegedly disorderly conduct resulted from his act of sharing constitutionally protected political speech. We affirm.

**FACTS AND PROCEDURAL HISTORY**

At approximately 9:00 a.m. on July 7, 2013, Officer Ronald Rehmel of the Indianapolis Metropolitan Police Department was dispatched to the scene of a single-vehicle accident near the intersection of 16th Street and Sherman Drive in Indianapolis. When Officer Rehmel arrived at the scene, he saw a 1998 Dodge Durango against a tree 125 to 150 feet from the intersection. The vehicle had sustained heavy front-end damage. Officer Rehmel also saw a man, who was subsequently identified as Frye, standing outside the vehicle, bleeding from the mouth.

2

Frye claimed that he had been driving south on Sherman Avenue and that another vehicle had come across the centerline into his path, causing him to swerve to avoid a collision. Frye stated that his vehicle then left the roadway and stopped when it hit the tree. However, Officer Rehmel, a trained accident reconstructionist, observed no signs of skidding or markings on the roadway to support Frye's account. Officer Rehmel determined that the evidence at the scene indicated that Frye's vehicle had left the roadway, passed through a bush, and traveled in a straight line until it collided with the tree approximately 125 to 150 feet from the intersection. Officer Rehmel also determined that there was no sign of braking until approximately thirty or forty feet from the tree. Officer Rehmel opined that the vehicle would have never reached a tree so far from the roadway had Frye been driving at or below the posted thirty-five mile per hour speed limit.

During the course of his investigation into the accident, Officer Rehmel requested Frye's driver's license and vehicle registration. Officer Rehmel noted that Frye had difficulty complying with this simple request. After fumbling for his driver's license, Frye handed Officer Rehmel his Chase bank card. Frye subsequently provided Officer Rehmel with his driver's license. Officer Rehmel observed that Frye was agitated and loud during this encounter.

Shortly thereafter, medical personnel arrived at the scene to tend to Frye. While medical personnel were attempting to tend to Frye, Frye became increasingly belligerent, loud, and uncooperative. At some point, Frye's behavior caused Officer Rehmel to become concerned for the safety of the medical personal. Frye continued this behavior after being

3

asked "three (3) or four (4) times" to quiet down. Tr. p. 26. Officer Rehmel further testified that when he encountered Frye, Frye (1) had the smell of alcohol on his breath and person; (2) acted in an increasingly belligerent manner; (3) displayed bloodshot and glassy eyes and disheveled and soiled clothing; (4) had an unsteady, slow, and staggering walk; (5) was argumentative; and (6) had difficultly following simple instructions. Officer Rehmel opined that in his experience, Frye's behavior was consistent with that of a person who was "highly intoxicated." Tr. p. 23.

Officer Rehmel attempted to have Frye perform standardized field sobriety tests, but Frye refused. Officer Rehmel twice read Frye the implied consent law, including the consequences of refusing a chemical test. Despite the warning, Frye twice refused a chemical test.

Other officers at the scene also observed that Frye acted in an extremely belligerent and very disrespectful manner. Frye used extremely vulgar language, using "a lot of curse words." Tr. p. 16. Frye also levied insults and name calling against the officers and the medical personnel and said some impolite things about Officer Rehmel's family. Officer Rehmel opined that there "was absolutely no reason for [Frye] to be as vulgar and as belligerent and hateful as he was at that entire investigation" and that Frye was "way off the chart." Tr. p. 22. Frye continued his loud and belligerent behavior after being asked to quiet down "three (3) or four (4) times." Tr. p. 26. Frye's loud and belligerent behavior was so loud that he distracted the individuals that were working to load Frye's vehicle onto a tow truck from their work approximately thirty to forty feet away from where Frye was standing.

4

Officer Rehmel subsequently described the loud level of Frye's tone by indicating that Frye spoke in such a loud tone that he "still would have been able to hear what [Frye] was saying" if he was to get in his police vehicle that was parked approximately fifteen feet away, roll up the windows, and turn on the radio. Tr. pp. 25-26.

On July 8, 2013, the State charged Frye with one count of Class A misdemeanor operating a vehicle while intoxicated and one count of Class B misdemeanor disorderly conduct. The trial court conducted a bench trial on August 27, 2013, after which the trial court found Frye guilty as charged. The trial court subsequently sentenced Frye to an aggregate term of 365 days of imprisonment with 361 days suspended to probation. This appeal follows.

## DISCUSSION AND DECISION

Frye contends that the evidence is insufficient to sustain his convictions for Class A misdemeanor operating a vehicle while intoxicated and Class B misdemeanor disorderly conduct. With respect to his Class B misdemeanor disorderly conduct conviction, Frye alternatively contends that his disorderly conduct conviction cannot stand because his allegedly disorderly conduct resulted from his act of sharing constitutionally protected political speech.

### I. Whether the Evidence is Sufficient to Sustain Frye's Convictions

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they

5

must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

**A. Class A Misdemeanor Operating a Vehicle While Intoxicated Conviction**

Frye challenges the sufficiency of the evidence to sustain his conviction for Class A misdemeanor operating a vehicle while intoxicated. In order to prove that Frye committed Class A misdemeanor operating a vehicle while intoxicated, the State was required to prove that Frye operated a vehicle while intoxicated "in a manner that endangers a person." Ind. Code § 9-30-5-2. To prove endangerment, the State must prove that Frye was operating the vehicle in a condition or manner that *could* have endangered any person, including the public, the police, or himself. *Outlaw v. State*, 918 N.E.2d 379, 381 (Ind. Ct. App. 2009).

In the instant matter, the evidence demonstrates that Frye was intoxicated and that he drove his vehicle in a manner which endangered a person, notably himself. The record demonstrates that Frye drove his vehicle 125 to 150 yards off the roadway and through a

bush before the vehicle collided with a tree. As a result of the collision with the tree, the vehicle sustained extensive front-end damage and Frye was injured.

Officer Rehmel, a trained accident reconstructionist, testified that although Frye claimed that he wrecked his vehicle after swerving in an attempt to avoid impact with another vehicle, upon investigation, he was unable to find any markings on or around the roadway suggesting that Frye's vehicle had swerved before leaving the roadway. Officer Rehmel testified that he "saw nothing in that area to show me that there was [another] vehicle that could have caused it." Tr. p. 30. Officer Rehmel further testified that the evidence at the scene of the crash suggested that Frye was traveling above the posted speed limit at the time of the accident and that he did not attempt to brake until roughly thirty to forty feet before impact with the tree. Officer Rehmel also testified that Frye's behavior was not consistent with that of an individual who was involved in a wreck that was caused by another vehicle crossing into his path. Specifically, Officer Rehmel opined that there "was absolutely no reason for him to be as vulgar and as belligerent and hateful as he was at that entire investigation" and that Frye was "way off the chart." Tr. p. 22.

Officer Rehmel further testified that when he encountered Frye, Frye (1) had the smell of alcohol on his breath and person; (2) acted in an increasingly belligerent manner; (3) displayed bloodshot and glassy eyes and disheveled and soiled clothing; (4) had an unsteady, slow, and staggering walk; (5) was argumentative; and (6) had difficultly following simple instructions. In addition, when Officer Rehmel requested that Frye provide him with Frye's driver's license, Frye first gave Officer Rehmel his Chase bank card before ultimately giving

7

Officer Rehmel his driver's license. Officer Rehmel opined that in his experience, Frye's behavior was consistent with that of a person who was "highly intoxicated." Tr. p. 23.

The above-stated evidence demonstrates both that Frye was intoxicated at the time he crashed his vehicle into the tree and that he endangered himself in the process. Again, to prove endangerment, the State must prove that Frye was operating the vehicle in a condition or manner that *could* have endangered any person, including the public, the police, or himself. *See Outlaw*, 918 N.E.2d at 381. The fact that Frye was injured as a result of his operation of his vehicle clearly indicates that he operated the vehicle in a manner that could have—and in fact did—endanger Frye. Thus, upon review, we conclude that the above-stated evidence is sufficient to sustain Frye's conviction for Class A misdemeanor operating a vehicle while intoxicated. Frye's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

**B. Class B Misdemeanor Disorderly Conduct Conviction**

Frye also challenges the sufficiency of the evidence to sustain his conviction for Class B misdemeanor disorderly conduct. A person engages in Class B misdemeanor disorderly conduct if he recklessly, knowingly, or intentionally disrupts a lawful assembly of persons or makes unreasonable noise and continues to do so after being asked to stop. Ind. Code § 35-45-1-3(a). The prohibition against unreasonable noise in Indiana's disorderly conduct statute is "aimed at the intrusiveness and loudness of expression, not whether the content of the language is obscene or provocative." *Hooks v. State*, 660 N.E.2d 1076, 1077 (Ind. Ct. App. 1996). "For the purpose of the disorderly conduct statute, noise is unreasonable if it is too

8

loud for the circumstances." *Yowler v. State*, 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008).

The record demonstrates that during the investigation into his accident and his treatment by medical personnel, Frye behaved in an increasingly loud and belligerent manner. Frye's expression was so loud and belligerent that it caused Officer Rehmel to become concerned for the safety of the medical personal tending to Frye. Frye continued this behavior after being asked "three (3) or four (4) times" to quiet down. Tr. p. 26. Officer Rehmel testified that Frye spoke in such a loud tone that he "still would have been able to hear what [Frye] was saying" if he was to get in his police vehicle that was parked approximately fifteen feet away, roll up the windows, and turn on the radio. Tr. pp. 25-26. In addition, Frye's loud expression was loud enough to distract the individuals working to load Frye's vehicle onto a tow truck from their work approximately thirty to forty feet away from where Frye standing.

Upon review, we conclude that the record demonstrates that Frye made unreasonable noise. He continued to be too loud for the circumstances even after Officer Rehmel asked him multiple times to quiet down. Frye's challenge to the sufficiency of the evidence to sustain his disorderly conduct conviction also amounts to an invitation for this court to reweigh the evidence, which, again, we will not do. *See Stewart*, 768 N.E.2d at 435.

## II. Whether Frye's Expression Amounted to Constitutionally Protected Expression

Alternatively, Frye contends that his disorderly conduct conviction cannot stand because his allegedly disorderly conduct resulted from his act of sharing constitutionally

9

protected political speech under Article I, Section 9 of the Indiana Constitution. Initially, we note that the State presented sufficient evidence to sustain Frye's disorderly conduct conviction that is based solely on the loudness of his expression, not the content of said expression. However, even if the trial court did consider the content of Frye's expression in finding that Frye committed Class B misdemeanor disorderly conduct, the record does not suggest, and Frye has failed to prove, that Frye's expression amounted to constitutionally protected political speech.

> Article [I], Section 9 of the Indiana Constitution provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." The right of free speech protected in Section 9 is "expressly qualified by the phrase 'but for the abuse of that right, every person shall be responsible.'" *J.D. v. State*, 859 N.E.2d 341, 344 (Ind. 2007).

*Blackman v. State*, 868 N.E.2d 579, 584 (Ind. Ct. App. 2007), *trans. denied*. "When reviewing whether the State has violated Article I, Section 9, we employ the following two-step analysis." *Id*. (citing *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996)). "First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an 'abuse' of the right to speak." *Id*. at 584-85. We have previously concluded that speech is protected under the constitution where it is aimed at protesting the actions of police, rather than hindering or obstructing police duties or investigations. *Hooks*, 660 N.E.2d at 1077.

The burden to prove that an expression is protected under Article I, Section 9 is on the individual claiming that his right of free speech has been restricted. *Whittington*, 669 N.E.2d

10

at 1369. "One way a claimant can try to meet this burden is to show that his or her expressive activity was political." *Id*. "If a claimant succeeds in that attempt, the State must demonstrate that its action has not materially burdened the claimant's opportunity to engage in political expression." *Id*.

Upon review, we conclude that Frye has failed to meet his burden of establishing that the speech in question qualified as protected political speech under Article I, Section 9 of the Indiana Constitution. The record is silent as to the actual content of Frye's expressions except for the fact that he referred to the medical personnel as "b*****s" and one of the officers as a "n****r." Tr. p. 53. In describing Frye's actions, Officer Rehmel testified that Frye displayed extremely vulgar language, using "a lot of curse words." Tr. p. 16. Specifically, Officer Rehmel testified that Frye's language was "[l]aced with all kinds of four (4) letter words that I do not use in any part of my vocabulary. But, it just continued. It never stopped." Tr. pp. 16-17. Officer Rehmel also testified, without specificity, that Frye said some impolite things about Officer Rehmel's family. Furthermore, the record is devoid of any evidence suggesting that Frye's outburst concerned State action or was political in nature. At most, the record demonstrates the use of vulgar language and name calling by Frye. Frye has failed to point to any authority suggesting that such language, without more, constitutes constitutionally protected political speech, and we do not believe that it does. *See generally Blackman*, 868 N.E.2d at 586 (providing that the defendant's comments were not political in nature as the defendant was saying nothing about state action).

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.