## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 20 2015, 6:42 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jonathan R. Sichtermann
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jessica Cundari,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 20, 2015

Court of Appeals Case No.
49A02-1410-CR-742

Appeal from the
Marion Superior Court

The Honorable Amy M. Jones,
Judge

Cause No. 49G08-1406-CM-31456

**Kirsch, Judge.**

[1] Following a bench trial, Jessica Cundari was found guilty of disorderly conduct[1] as a Class B misdemeanor. She appeals, challenging the sufficiency of the evidence to support her conviction. Specifically, Cundari contends that the language that constituted disorderly conduct was constitutionally-protected political speech.

[2] We affirm.

## Facts and Procedural History

[3] On June 9, 2014, Cundari called the Indianapolis Metropolitan Police Department ("IMPD") to report that she had been attacked the previous night at her apartment complex. Before calling the police, Cundari had twice entered the apartment complex office, the first time to deliver an incident report about the prior evening and the second time to deliver a letter. Apparently, during the second visit, Cundari had made threatening remarks to the manager of the apartment complex.

[4] IMPD Officer Todd Wellmann responded to the apartment complex to take Cundari's complaint.[2] Officer Wellmann's investigation that day caused him to speak with the apartment complex manager on two separate occasions. After

---

[1] See Ind. Code § 35-45-1-3.

[2] In the record before us, this officer's name is spelled both as "Wellman" and "Wellmann." *Appellant's App.* at 10. At trial, the officer was not asked to spell his name. Seriously?! *Tr.* at 4. While the parties spell this officer's name as Wellman, we use the spelling with the double "n" at the end because that is the way it is spelled in his probable cause affidavit. *Appellant's App.* at 10.

the second meeting, Officer Wellmann left the office to look for Cundari. Officer Wellmann found Cundari fifty to seventy-five feet away from the office. Cundari was speaking with her friends, including a woman named Kiara. Cundari seemed "pretty aggravated." *Tr.* at 7. Based on information supplied by the apartment complex manager, Officer Wellmann placed Cundari under arrest for intimidation.

[5] During trial, Officer Wellmann testified that, at the time she was arrested, Cundari "was swearing and I don't know at the top of her lungs but in a yelling tone making threats." *Id.* Officer Wellmann "asked her to be quiet on several occasions. Finally, [a] second officer pulled up and placed [Cundari] on the backside of [Officer Wellmann's] car (inaudible) kind of concealing her from the group of onlookers and her friends that were farther to the west." *Id.* Officer Wellmann testified that the yelling and screaming went on "for eight to ten minutes. Both myself and the other officer asked her numerous times to be quiet, told her that there were kids, that no amount of yelling was going to get her out of the situation. Finally, I advised her in addition to the intimidation she was under arrest for disorderly conduct." *Id.* at 8.

[6] At trial, Cundari's friend Kiara testified in Cundari's defense. Kiara stated that Cundari did not yell after she was arrested, "she just kept asking what was she being arrested for. She was crying. She . . . kept asking the officer and the officer kept telling her the same thing and wasn't no yelling though." *Id.* at 16. Following a bench trial, Cundari was found guilty of disorderly conduct. She now appeals

# Discussion and Decision

Cundari challenges whether the evidence was sufficient to sustain her conviction for disorderly conduct, emphasizing whether her speech constituted protected political speech under the Indiana Constitution. The offense of disorderly conduct is governed by Indiana Code section 35-45-1-3, which provides in relevant part:

> (a) A person who recklessly, knowingly, or intentionally:
> (1) engages in fighting or in tumultuous conduct;
> (2) makes unreasonable noise and continues to do so after being asked
> to stop; or
> (3) disrupts a lawful assembly of persons;
> commits disorderly conduct, a Class B misdemeanor.

"The constitutionality of the disorderly conduct statute is determined on an as applied basis under Article 1, section 9 of the Indiana Constitution." *Dallally v. State*, 916 N.E.2d 945, 951 (Ind. Ct. App. 2009). Article 1, section 9 provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: *but for the abuse of that right, every person shall be responsible*." Ind. Const. art. 1, § 9 (emphasis added).

Cundari was charged under Indiana Code section 35-45-1-3(a)(2) of the disorderly conduct statute; however, she does not challenge the sufficiency of the evidence to convict her under the statute itself. Instead, stating as follows, she argues that the alleged "disorderly conduct" was protected political speech:

> Jessica Cundari was convicted of disorderly conduct for loudly using
> profane and offensive language. She did so after she was placed under

arrest after calling the police to make a report of an assault on her person. Because her speech focused on the actions of the arresting officer, it was political in nature. The burden shifted to the State to produce evidence to prove that Ms. Cundari abused her right to speak. . . . The State failed to prove that her speech and behavior created a public nuisance, rose above the level of a fleeting annoyance, or was otherwise tor[tious]. Since the State failed to prove the speech caused actual discomfort to others or interfered with their enjoyment of privacy, this Court must reverse.

*Appellant's Br*. at 5.

[10] In reviewing the constitutionality of Indiana Code section 35-45-1-3 as applied to a defendant, we employ a two-step analysis. *Dallaly*, 916 N.E.2d at 951. "'First, we must determine whether state action has restricted a claimant's expressive activity; second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak.'" *Id*. (quoting *Blackman v. State*, 868 N.E.2d 579, 584-85 (Ind. Ct. App. 2007) (citing *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996)), *trans. denied*).

[11] "The first prong of this inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on her loud speaking during a police investigation." *Id*. at 952 (quoting another source). Here, the record reveals that Cundari was arrested for disorderly conduct after she swore and yelled at the officers during her arrest for intimidation. Accordingly, Cundari's arrest for disorderly conduct restricted her expressive activity. *Id*.; *see Shoultz v. State*, 735 N.E.2d 818, 825 (Ind. Ct. App. 2000) (holding that person's conviction for making unreasonable noise based on loud speaking during police investigation constituted state action restricting defendant's expressive activity), *trans. denied*.

[12] In order to meet the second prong, Cundari must prove that "the State could not reasonably conclude that the restricted expression was an 'abuse' of [her] right to speak, and therefore, the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute." *Blackman*, 868 N.E.2d at 585. "Generally, when we review the State's determination that a claimant's expression was an abuse of the right of free speech under the Indiana Constitution, we need only find that the determination was rational." *Id*. "However, if the expressive activity that precipitated the disorderly conduct conviction was political in nature, the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression." *Id*. The State can meet this burden by producing evidence that "the expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests." *Id*. "In order to demonstrate such particularized harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy." *Id*. Evidence of mere annoyance or inconvenience is not sufficient. *Id*.

[13] "Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Id*. However, where the individual's expression focuses on the conduct of a private party, including the speaker herself, it is not political. *Id*. We apply an objective standard when we review the nature of expression. *Id*. The claimant bears the burden of proving that the expressive activity was not an abuse of her right to

free speech by showing that her expression was political. *Id.* If the expression is ambiguous, we must find that the expression was not political and must review the State's restriction of the expression under standard rational review. *Id.*

[14] Cundari contends that her statements to the officers were protected political speech because she was commenting on the government action of the arrest. We disagree. To support her contention that the speech was political, Cundari contends that she did not start yelling while she was in the complex office; instead, she only began yelling and swearing after she was arrested for intimidation. *Appellant's Br.* at 9. Although Cundari may have been swearing and yelling during her arrest for intimidation, the record before us does not support that she was commenting or criticizing the police conduct. Officer Wellmann testified that Cundari's tirade had more to do with the staff at the apartment complex office and the previous night's events than it had to do with Officer Wellmann. *Tr.* at 8. Cundari's argument that Kiara did not hear Cundari yell or curse at the officer but only heard her asking why she was being arrested is simply a request that we reweigh the evidence. *Appellant's Br.* at 9. This we will not do. *Blackman*, 868 N.E.2d at 584.

[15] Here, Cundari has not successfully demonstrated that the speech constituting her disorderly conduct was protected political speech. Indiana Code section 35-45-1-3 was constitutional as applied. As such, the burden did not shift to the State to show that it did not materially burden the claimant's opportunity to engage in political expression. *Blackman*, 868 N.E.2d 585. Finding that the

alleged disorderly conduct was not political speech, we find sufficient evidence to support Cundari's conviction for disorderly conduct as a Class B felony.

[16] Affirmed.

[17] Vaidik, C.J., and Bradford, J., concur.