## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Eugene Jabbar Johnson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 30, 2020

Court of Appeals Case No.
20A-CR-779

Appeal from the Grant Superior Court

The Honorable Warren Haas, Judge

Trial Court Cause No.
27D03-1910-CM-147

**Brown, Judge.**

[1] Jeremy Eugene Jabbar Johnson appeals his conviction for disorderly conduct as a class B misdemeanor[1] and claims the evidence is insufficient to sustain his conviction. We affirm.

## Facts and Procedural History

[2] On September 2, 2019, at approximately 11:00 p.m., Mike McGriff was smoking a cigarette on the front porch of his house located in a "normal everyday average" neighborhood with approximately "25, 30 families." Transcript Volume at 33. His vehicle, his father-in-law's vehicle, and his wife's vehicle were parked on the side of the street near his house. At some point, McGriff saw a man, later identified as Johnson, "trying to open" the door to his father-in-law's vehicle, and he told Johnson to "get away from the car." *Id.* Johnson claimed the vehicle was his, and McGriff said, "No, it's not your car. Get away from the car." *Id.* Johnson "walked on a little bit" and then stopped behind the rear of the vehicle belonging to McGriff's wife. *Id.* McGriff said, "Man, just move on. Get away from the cars." *Id.* Johnson lifted the handle to the vehicle, and McGriff threatened to call the police if Johnson did not "get away" from the vehicles. *Id.* at 34. Johnson "holler[ed]" at McGriff and stated, "I know where you live" and "you don't know who I am." *Id.* He moved to McGriff's vehicle and started to open the door, and McGriff stated, "This is it.

---

[1] Ind. Code § 35-45-1-3(a)(2) provides that a "person who recklessly, knowingly, or intentionally: . . . makes unreasonable noise and continues to do so after being asked to stop . . . commits disorderly conduct, a Class B misdemeanor."

I'm done." *Id.* At some point Johnson stepped onto McGriff's property. Johnson requested a cigarette from McGriff, who then declined to give one, requested he "not come up here," and called the police. *Id.* Johnson began to urinate on the back of the vehicle of McGriff's wife's and "holler[ed] back and forth" with McGriff, who was on the phone with police and "telling him, 'Just, just move on. The police are coming. Just move on. Just go away. Get out of here.'" *Id.*

[3] Law enforcement responded to McGriff's call, after which McGriff did not interact with Johnson. When Marion Police Officer Chris Butche arrived, Johnson was in the street, "very loud," and "very aggressive," and Officer Butche detected an odor of alcoholic beverage coming from him. *Id.* at 45. Marion Police Officer Justin Biddle arrived at the scene, and he smelled an alcoholic beverage on the breath of the "extremely belligerent" Johnson. *Id.* at 59. Following several unsuccessful requests that Johnson keep his voice down, the officers secured him in handcuffs. They transported him to the hospital for medical clearance due to his intoxication, where he was "still agitated, argumentative, loud, boisterous" and cursed at Officer Biddle, the nurses, and others. *Id.* at 48. Officers instructed him to "keep it down" and asked him to stop multiple times, and a nurse asked them to shut the door because the other hospital occupants were complaining of it "being so loud." *Id.* at 60. At some point, Johnson was transported to the jail.

[4] On September 5, 2019, the State charged Johnson with public intoxication, battery by bodily waste, and disorderly conduct as class B misdemeanors. The

charging information for the disorderly conduct count alleged Johnson "did recklessly, knowingly, or intentionally make unreasonable noise, to-wit: yelling and/or cursing; and continued to do so after being asked to stop . . . ." Appellant's Appendix Volume II at 73.

[5] At trial, the jury heard the testimony of McGriff and Officers Butche and Biddle. When asked, "Are you just kind of going back and forth like a little disagreement or what is his demeanor," McGriff stated: "Angry. I mean, like verbal, verbal altercation back and forth. We're, we're arguing at this point. Um, yelling. Pretty much, you know. I'm hollering at him. He's hollering at me back. Um, you know, we're not exchanging pleasantries by any means at this point." Transcript Volume at 35. When later asked to further explain his statement that there was no doubt in his mind that Johnson was intoxicated, McGriff indicated that Johnson was "slurring his words, leaning, . . . stumbling, . . . and just super-confrontational." *Id.* at 37. When asked whether his night was disrupted, he stated, "[a]bsolutely," and indicated the neighbors were outside. *Id.*

[6] Officer Butche testified that Johnson was "very loud" and "very aggressive," and when asked to provide the signs of Johnson's intoxication, he testified: "Just the smell, um, slurred speech, kind of off balance a little bit, aggressive, verbally not, not physically aggressive, but just verbally aggressive, just uncooperative." *Id.* at 44-45. In response to the statement, "everyone can get a little bit loud," and the question, "how loud are we talking," Officer Butche stated, "[l]oud enough to awake individuals" and "just loud enough to probably

get the attention of residents inside their houses near there." *Id.* at 46. He answered affirmatively when asked "[s]o everyone [Johnson] encountered he was acting the same way, belligerent, loud, all of that." *Id.* at 54.

[7] Officer Biddle indicated that he was with Johnson from the time he arrived at the hospital until Johnson was transported to the jail, and when asked to explain what happened during that time at the hospital, he explained that Johnson was "very loud, very belligerent," "continued to curse at [Officer Biddle], the nurses, passerbys," "would not listen" when Officer Biddle asked him to direct the invectives at him, and continued to "call, um, telling the nurse, the nurses to . . . 'F you. F off'" to the point where he "was so loud that a nurse from the outside came in and asked us to shut [] the door because our ER occupants were complaining, patrons were complaining of us, uh being so loud." *Id.* at 60. Officer Biddle indicated he kept telling Johnson "to stop" and clarified that he asked him to stop "multiple times," or at least "over ten times and probably more than that." *Id.* at 61.

[8] The jury did not arrive at a unanimous decision with regard to the public intoxication count, found Johnson guilty of the disorderly conduct as a class B misdemeanor, and found him not guilty of battery by bodily waste. The court sentenced Johnson to ninety days.

## *Discussion*

[9] Johnson argues a variance, "or more specifically, a flaw," existed in the "State's contention [he] was cursing and therefore could be found guilty of making

unreasonable noise." Appellant's Brief at 11. He points to Officer Biddle's testimony and contends the "'loud' noise was not identified in the charge," the word "loud" was not included in the charging information, and that cursing can occur in a whisper. *Id.* He asserts reversal is required and the characterization of the offenses in the information led the jury in the wrong direction.

[10] To the extent Johnson argues there was a variance between the charging information and evidence presented at trial, we note the Indiana Supreme Court has provided that, "[b]ecause the charging information advises a defendant of the accusations against him, the allegations in the pleading and the evidence used at trial must be consistent with one another." *Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014). A variance is an essential difference between the two. *Id.* (citing *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997)). Not all variances, however, are fatal. *Id.* Relief is required only if the variance (1) misled the defendant in preparing a defense, resulting in prejudice, or (2) leaves the defendant vulnerable to future prosecution under the same evidence. *Id.* (citing *Winn v. State*, 748 N.E.2d 352, 356 (Ind. 2001)). Here, Johnson does not expressly argue that the allegation misled him in preparing a defense or that he would be vulnerable to future prosecution under the same evidence. While the word "loud" is not included in the charging information and the testifying officers indicated Johnson was loud, we cannot say reversal is warranted on this basis. The charging instrument alleges Johnson made unreasonable noise, "to wit: yelling and/or cursing," Appellant's Appendix Volume II at 73, and testimony was presented that he was loud enough to awake nearby neighbors

and was loud at the hospital. *See* Transcript Volume at 37, 46, 61. Johnson acknowledges yelling "infers a loud sound and, therefore, could qualify as unreasonable noise" and that a person "cannot yell something in a whisper." *See* Appellant's Brief at 10. Under the circumstances, we conclude Johnson was aware of the alleged criminal conduct of which he was accused, and we cannot say that any variance was material or prejudiced him.

[11] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[12] Ind. Code § 35-45-1-3 governs the offense of disorderly conduct and provides in part that "[a] person who recklessly, knowingly, or intentionally . . . makes unreasonable noise and continues to do so after being asked to stop . . . commits disorderly conduct, a Class B misdemeanor." "[T]o support a conviction for disorderly conduct, the State must prove that a defendant produced decibels of sound that were too loud for the circumstances." *Blackman v. State*, 868 N.E.2d 579, 584 (Ind. Ct. App. 2007) (quoting *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999)), *trans. denied*.

[13] The evidence most favorable to Johnson's conviction reveals that he made unreasonable noise by yelling loudly in a residential neighborhood in the

middle of the night and in a hospital. Police officers made numerous requests that Johnson keep his voice down, but he did not comply. Based upon the record, we conclude that evidence of probative value exists from which the jury could find Johnson guilty of disorderly conduct as a class B misdemeanor. *See Blackman*, 868 N.E.2d at 584 (holding that the defendant's argument was simply a request that we reweigh the evidence and that there was sufficient evidence to support the defendant's conviction for disorderly conduct); *Humphries v. State*, 568 N.E.2d 1033, 1037 (Ind. Ct. App. 1991) (holding that officer's testimony indicating that he asked the defendant to quiet down twice and ultimately decided to arrest the defendant for disorderly conduct raised a reasonable inference that the defendant was speaking in an unreasonably loud voice and that the evidence was substantial enough to support the defendant's conviction).

[14] For the foregoing reasons, we affirm Johnson's conviction.

[15] Affirmed.

Robb, J., and Crone, J., concur.